**RICK FURNITURE DISTRIBUTING COMPANY, INC., Appellant,**

v.

**Michael P. KIRLIN and Marcy Kirlin, Appellees.**

**No. 20972.**

Court of Appeals of Texas, Dallas.

March 31, 1982.

Rehearing Denied May 13, 1982.

John A. George, Dallas, for appellant.

Carl E. Mallory, Arlington, for appellees.

Before TED Z. ROBERTSON, CARVER and ALLEN, JJ.

ALLEN, Justice.

Rick Furniture Distributing Company, Inc. (Rick Furniture) brought this action against Michael P. and Marcy Kirlin (Kirlin) to collect money due under a retail installment contract. The Kirlins filed a counterclaim alleging violations of the Tex-as Consumer Credit Code, Tex.Rev.Civ.Stat. Ann. art. 5069 et seq. (Vernon Supp. 1981), and sought statutory penalties under articles 5069–8.01 and 8.02. The trial court held that Rick Furniture had in fact charged a time-price differential greater than twice the amount allowed by law and entered a judgment awarding the Kirlins the sum of $1,781.54 plus $3,140.00 in attorney's fees. On appeal, Rick Furniture contends that (1) Michael Kirlin was not a "retail buyer" under the terms of article 5069–6.01(c); (2) the filing of plaintiff's original petition did not constitute a "charging" under the terms of article 5069–8.01 and 8.02; (3) the Kirlins were not charged double the amount of time-price differential prohibited by article 5069–8.02; (4) articles 5069–8.01 and 8.02 are mutually exclusive; and (5) article 5069–8.02 is unconstitutional. For the following reasons we reject these contentions and affirm the judgment of the trial court.

The facts of the case are undisputed. Between June 26, 1978 and January 12, 1979, the Kirlins entered into three retail installment contracts with Rick Furniture. All of the Kirlins' prior obligations were merged into the third contract executed on January 12, 1979. It is this third contract which is the subject of this suit. The amount financed by the contract was $2,961.56 plus a finance charge of $710.77. The total sum of $3,672.33 was to be paid in 36 monthly payments of $103.00 each. The Kirlins made two monthly installment payments totalling $206.00 and defaulted. Rick Furniture assessed authorized charges against the Kirlins in the amount of $5.38 and on July 11, 1979, sued for the sum total of $3,471.71 due under the contract. Rick Furniture admitted that the amount sued for included $454.24 of unearned time-price differential and that only $256.53 of the $710.77 in finance charges had accrued on the date suit was filed. On November 30, 1979, Rick Furniture filed its first amended original petition reducing its damage claim to $3,017.17.

Rick Furniture first contends that Michael Kirlin was not a "retail buyer" under

the terms of article 5069–6.01(c) and therefore was not entitled to any relief under the provisions of the Consumer Credit Code. Such a position is untenable. The undisputed evidence shows that all three retail installment contracts were made in the name of Michael P. Kirlin, that Mr. Kirlin was a signatory to the first of such contracts, and that the first two contracts were merged into the instrument sued upon. More significantly, Rick Furniture joined Michael Kirlin as a party in the underlying suit and treated him as a retail buyer throughout the proceedings. Consequently Rick Furniture is now estopped from contending that Michael Kirlin was not entitled to the relief afforded by the trial court. This point of error is overruled.

In its second point of error Rick Furniture asserts that there is insufficient evidence to support the trial court's finding that the filing of plaintiff's original petition constituted a "charging" under the provisions of articles 5069–8.01 and 8.02. In *Moore v. Sabine National Bank of Port Arthur*, 527 S.W.2d 209 (Tex.Civ.App.—Austin 1975, writ ref'd n. r. e.), the Austin Court of Civil Appeals rejected this contention and held that, as a matter of law, the Bank's notice of intention to repossess, original petition, and sequestration affidavit constituted a "charging" of unearned time-price differential. The court examined similar consumer protection laws in other jurisdictions and concluded that:

> [T]he statutory penalty set forth in Article 5069–8.01 and 8.02 is invoked when excessive interest, time-price differential or other charges have been contracted for, *charged* or received. To accept appellee's construction of Article 5069–8.01 and 8.02 would, in our opinion, render meaningless the word "charging" (emphasis in original).

*See* also *Southwestern Investment Company v. Mannix*, 557 S.W.2d 755 (Tex.1977); *General Motors Acceptance Corporation v. Uresti*, 553 S.W.2d 660 (Tex.Civ.App.—Tyler 1977, writ ref'd n. r. e.).

■ Rick Furniture urges that *Moore* should be distinguished from the case at bar since no demand was made upon the Kirlins in the form of a notice of intention to repossess or a sequestration affidavit. They reason that therefore, any overcharge was corrected by their first amended original petition. The Tyler Court of Civil Appeals addressed this issue in *Nationwide Financial Corp. v. English*, 604 S.W.2d 458 (Tex.Civ.App.—Tyler 1980, no writ) and stated:

> [I]t is our view that Nationwide's action in amending its counterclaim so as to rebate the unearned time-price differential was not sufficient to nullify its prior violation of the Code. To allow the defendant, upon being faced with an action for penalties for overcharges, to escape liability by reducing the amount demanded to within permissible limits, would allow it to circumvent the Statute. If a creditor is to be allowed to reduce the amount that he sues for after a usury claim has been asserted against him, then the penalty provided by the statute would be totally ineffective, since any violation and penalties could be erased simply by reduction of the amount sued for (citations omitted).

We decline Rick Furniture's invitation to limit the holdings in *Moore* and *English* to those situations where a creditor makes some overt act, outside the legal process, to effect the collection of unearned interest. Such a course is inconsistent with the policies underlying the Consumer Credit Code and we refuse to deviate from the emerging line of authority maximizing consumer protection under the Act. Accordingly, we hold the filing of plaintiff's original petition demanding the payment of sums which included unearned time-price differential constituted a "charging" in violation of articles 5069–8.01 and 8.02.

■ Rick Furniture next urges that the evidence was insufficient to support a finding that it charged the Kirlins in excess of double the total amount of interest, time-price differential and other charges authorized by the Consumer Credit Code. To support this argument Rick Furniture offers the following computation of the maximum allowable charges:

CASH PRICE (of the furniture)       $2,962.00

FINANCE CHARGE

1st  $500  =$500 x 12% = $60/year x 3 years = $180
2nd $500 =$500 x 10% = $50/year x 3 years = $150

Excess/Over $1,000 = $1,962 x 8% = $157 year
                    $157.00 x 3 years = $471

Total Finance Charge (Time Price Diff.)   =   801.00
           Total                  $3,763.00

ACCRUED PORTION OF FINANCE CHARGE:

Rule of 78's= $\frac{231}{666}$ = 34.69% x $801.00 = $280.00

CASH PRICE      $2,962
Accrued Int.        280
Late Charges        35
              $3,277

DOUBLE ALLOWABLE CHARGES:

Accrued Finance Charge    280 x 2 = 560.00

Late Charges             35 x 2 =   70.00
                                630.00

Add Cash Price                 2,962.00
                                3,592.00

Rick Furniture asserts that double the maximum amount that could have been charged to the Kirlin was $3,592.00, which is more than the $3,471.71 prayed for in plaintiff's original petition. In so calculating, Rick Furniture ignores the plain language of article 5069–8.02. That section prohibits any person from "contracting for, charging or receiving interest, time-price differential or other charges which are in the aggregate *in excess of double the total amount of interest, time-price differential and other charges* authorized by this Subtitle" (emphasis added). If these charges are more than twice the legal maximum, it is immaterial whether the total of these charges and the cash price is more than twice the amount that could legally have been demanded. The record reflects that the maximum allowable interest, time-price differential and other authorized charges which Rick Furniture could have charged against the Kirlins was $315.00 ($280.00 accrued interest and $35.00 late charges). Double that amount is $630.00 which is *less* than the $710.77 in interest, time-price differential and other charges demanded by Rick Furniture on July 11, 1979. For these reasons, this point of error is overruled.

Rick Furniture further argues that articles 5069–8.01 and 8.02 are mutually exclusive. No authority is cited for this novel proposition and we know of none. This contention is without merit.

In its final two points of error Rick Furniture contends that article 5069–8.02 is unconstitutional in that it constitutes an excessive fine or penalty and denies it due process of law. A similar argument was rejected by the Texas Supreme Court in *Pennington v. Singleton*, 606 S.W.2d 682, 690 (Tex.1980). In upholding the treble damage provision of the Deceptive Trade Practice Act, Tex.Bus. & Com.Code Ann. § 17.50(b)(1) (Vernon Supp. 1981), the court reasoned as follows:

> Generally, prescribing fines is a matter within the discretion of the legislature. A fine is not unconstitutionally excessive and the courts will not overrule the legislature's discretion, "except in extraordinary cases, where it becomes so manifestly violative of the constitutional inhibition as to shock the sense of mankind." Similarly, as to due process, the States possess a wide latitude of discretion in the matter of imposing fines, and "their enactments transcend the limitation only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable" (citations omitted).

A primary consideration in determining whether a fine is excessive is whether it is fixed with reference to the object it seeks to accomplish. *Pennington v. Singleton, supra; St. Louis, Iron Mountain & Southern Ry. Co. v. Williams*, 251 U.S. 63, 40 S.Ct. 71, 64 L.Ed. 139 (1919). In *Anguiano v. Jim Walter Homes, Inc.*, 561 S.W.2d 249, 254–255 (Tex.Civ.App.—San Antonio 1978, writ ref'd n. r. e.), the San Antonio Court of Civil Appeals noted that the purpose of the penalty provisions of the Texas Consumer Credit Code is to deter violators and to encourage enforcement of the Code by private litigants. After recognizing the spirit of the law, the court went on to uphold the constitutionality of Chapter 8 of the Code. We find the reasoning in *Pennington v. Singleton* and *Anguiano v. Jim Walter Homes, Inc.* controlling and conclude that article 5069–8.02 does not consti-

tute an excessive penalty or deny appellant due process of law. Considering the abuses attempted to be regulated by the Texas Consumer Credit Code, we are not able to say that the penalty imposed is so excessive as to "shock the sense of mankind."

█ Nor do we agree with Rick Furniture's argument that the failure of article 5069–8.02 to provide a defense of "bona fide" error renders this section unconstitutional. The record reflects that Mrs. Margaret Edwards, collection manager for the furniture company, verified plaintiff's original petition in the amount of $3,471.71 and stated, under oath, that "there are no set-offs, charge-backs, or other credits outstanding." On the facts of this case, the defense of bona fide error could not have been raised even if available. Consequently, this claim is without merit.

█ In two cross points counsel for the Kirlins contend that the trial court's award of attorney's fees in the amount of $400 in the event of appeal to the Court of Appeals and $400 in the event of appeal to the Texas Supreme Court is unreasonably low. The allowance of attorney's fees is vested in the sound discretion of the trial court and its judgment will not be reversed without a clear showing of abuse of that discretion. *Espinoza v. Victoria Bank & Trust Co.*, 572 S.W.2d 816, 828 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.); *Reintsma v. Greater Austin Apt. Maintenance*, 549 S.W.2d 434, 437 (Tex.Civ.App.—Austin 1977, writ dism'd w. o. j.). The range of what is reasonable is wide, and this court cannot set aside an award merely because it would have allowed more or less. *Espinoza v. Victoria Bank & Trust Co., supra.* Counsel cites us to no authority and otherwise fails to persuade us that the trial court's award of $400 for each appeal is manifestly unreasonable.

The judgment is affirmed.