## PRAIRIE VALLEY INDEPENDENT SCHOOL DISTRICT, Appellant,

v.

Archie SAWYER d/b/a Sawyer Plumbing Service, James L. Geurin d/b/a Geurin Electric Service, and Foxworth-Galbraith Lumber Company, Inc., Appellees.

No. 2–83–124–CV.

Court of Appeals of Texas, Fort Worth.

Feb. 16, 1984.

Rehearing Denied April 5, 1984.

Stark, Barnhart & Morris and Richard S. Stark, Gainesville, for appellant.

Barbara Nunneley, Douglas R. Hudman, Fort Worth, for appellees.

Before JORDON, BURDOCK and HILL, JJ.

## OPINION

HILL, Justice.

This is a suit brought by subcontractors and a materials supplier for service and materials supplied for the construction of a school building. The trial court, sitting without a jury, awarded a judgment for the subcontractors and supplier against the school district.

We affirm in part and reverse and render in part.

In the Spring of 1978, appellant, Prairie Valley Independent School District, entered into a contract for the construction of a vocational-agricultural building with Carminati Metal Construction for a total consideration of $58,000.00. Appellee, Archie Sawyer, d/b/a Sawyer Plumbing Service, subcontracted to perform the concrete slab work and the plumbing work. The electrical and mechanical work were subcontracted to appellee, James L. Geurin, d/b/a Geurin Electric Service. Appellee, Foxworth-Galbraith Lumber Company, Inc., was a materials supplier to Carminati Metal Construction. Construction on the project was commenced in June, 1978, but Carminati abandoned the project sometime in the Spring of 1979. The school district did not obtain a performance or payment bond from Carminati.

In June 1979, the school district retained A.F. Robertson to act as general contractor for the completion of the building. The appellees argue that during the time period from Carminati's abandonment until the hiring of Robertson, the school district assumed the position of general contractor and assumed responsibility for the ongoing and day-to-day progression of the project. During this time appellees continued to provide services and materials.

Appellant predicates its appeal on eight points of error. In its first three points, appellant argues that the trial court erred in granting judgment and awarding damages to each appellee because the awards are not supported by any evidence, they are not supported by sufficient evidence, or they are against the great weight and pre-

ponderance of the evidence so as to be unjust.

■ In our review of appellant's "no evidence" point, it is fundamental that the trial court's fact findings be upheld if there is more than a scintilla of evidence in support thereof. *See Stedman v. Georgetown S. & L. Ass'n,* 595 S.W.2d 486, 488 (Tex. 1979). There is some evidence, more than a scintilla, if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds as to the existence of the vital fact. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). Moreover, in testing these findings, we must review the evidence in its most favorable light, considering only the evidence and inferences which support the findings and rejecting the evidence and inferences contrary to the findings. *Stedman, supra;* Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEXAS L.REV. 361 (1960).

■ On the other hand, when we confront a challenge that the evidence is insufficient, or that the judgment is against the great weight and preponderance of the evidence, we must consider and weigh all the evidence in the case, including that which is contrary to the judgment. *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980). We must determine whether the judgment was so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). In other words, this court must decide if the evidence which supports the judgment is so weak, or the evidence to the contrary is so overwhelming, as to warrant a setting aside of the judgment and remanding for a new trial. *See Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965); Calvert, *supra.*

■ Appellee Sawyer testified in support of the award of damages that he provided all the plumbing and the foundation for the building in question. He testified that in his estimation the prices charged for the work he performed on the building were reasonable and customary in Montague County in 1978 and 1979. He further testified that such charges were currently owed in the amount of $4,144.60 plus fifteen percent (15%) of $4,144.60 and had not been paid. The trial court found that Sawyer rendered services and furnished materials in the sum of $4,744.00.

Appellee Geurin testified in support of the award of damages that he provided all the electrical work done on the building. He also testified that the amount of $5,833.00 was a fair and reasonable charge in Montague County for the labor and services provided. Geurin further testified that such amount was currently owed and had not been paid. The trial court found that the amount of $5,833.00 represented the value of the services rendered and materials furnished by Geurin to the school district.

Appellee, Foxworth-Galbraith Lumber Company, through its manager, Bobby Eldred, testified that the company provided materials for the construction of the building. Eldred testified that the charges made were the normal and customary charges for those goods and merchandise in 1978 and 1979, and that the total sum of $4,025.77 is a fair and accurate figure for the materials provided for the building. The trial court found that the amount of $3,967.19 represented the value of the services and materials provided by appellee Foxworth-Galbraith to the school district.

Upon reviewing all the evidence presented, we hold that the damages awarded to each of the appellees were supported by sufficient evidence, and we overrule appellant's first three points of error.

■ In appellant's fourth and fifth points of error, the school district alleges that the trial court erred in finding that the appellant entered into supervision and control of the construction of the building, and that the appellant assumed the position of general contractor because there was no evidence or insufficient evidence to support these findings, or that such findings were against the great weight and preponderance of the evidence.

Appellee Sawyer testified that he, Riley Simpson, the vocational-agricultural instructor and member of the building committee, and Jack Uselton, a school board member, staked the foundation of the project and that Simpson directed them as to where to place the building. Sawyer also testified that Simpson instructed the electrician, Geurin, concerning the location for the electrical outlets, and that Simpson was present on the construction site on a daily basis. This testimony was later corroborated by Geurin. Geurin also stated that he felt Simpson had the authority to instruct him as to the specifics of the buildings, and that Simpson supervised his day-to-day work.

Although Simpson testified that he was never asked to oversee the project, Uselton stated in his deposition that the school board did ask Simpson to oversee the construction of the building. Simpson went on to testify that in the interim between Carminati leaving and the hiring of the new contractor, there was no one responsible for overseeing the work done. Simpson also stated that neither he nor anyone else held himself out as the general contractor.

We find, after considering all the evidence and testimony presented, that the trial court's findings that appellant entered into supervision and control of the construction and assumed the position of general contractor were adequately supported by the evidence. Appellant's fourth and fifth points of error are overruled.

Appellant asserts in his sixth point of error that the trial court erred in finding an implied contract between the school district and each of the appellees and applying the theory of quantum meruit because the school district was not put on notice, prior to rendering services or furnishing materials, that any of the appellees sought to charge the school district for same.

It has been held that the necessary elements for awarding recovery under quantum meruit include: (1) valuable services were rendered or materials furnished (2) for the person sought to be charged, (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him, (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *Garza v. Mitchell,* 607 S.W.2d 593, 600 (Tex.Civ.App.—Tyler 1980, no writ); *City of Ingleside v. Stewart,* 554 S.W.2d 939, 943 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.).

It is undisputed that both Sawyer and Geurin provided valuable services to the appellant which were accepted, used and enjoyed by the school district. The only element of the theory of quantum meruit which appellant attacks is whether the school district was put on notice that any of the appellees sought payment from the appellant for the services performed.

Appellee Sawyer testified that after trouble began in the construction of this building, he was encouraged to continue working by James Brasier, the school superintendent, and Riley Simpson. Additionally, Sawyer stated that Braiser and Simpson told him that money was still available and that another "draw" could be made. Although Sawyer testified that he did not expect Simpson to have the authority to pay him or fire him, he believed that Simpson was representing the appellant and heard Simpson give directions concerning the construction of the project.

There was also testimony by appellee Geurin that Brasier and Simpson told him that there was money left and that Geurin would get his share of it if he stayed and completed the project. Geurin also testified that had Brasier told him that he was not going to get any money, he would not have continued working. Furthermore, Geurin stated that after Carminati's departure from the project, Simpson supervised the day-to-day work.

Appellant argues that Brasier never told any of the appellees that they would be paid if they would continue to work, but only that Carminati had one more draw remaining. Brasier testified that he never told Sawyer or Geurin anything which

would have induced them to do more work. Brasier stated that he told Sawyer and Geurin that Carminati had hired them and not Brasier or the school district.

 Upon reviewing all the evidence presented, we find that the factual findings made by the trial court as to appellees Sawyer and Geurin are sufficiently supported by the evidence, including the finding that the appellant was put on notice that the appellees Sawyer and Geurin sought payment from appellant for services performed. *See Ingleside, supra,* at 944–45. There was no testimony establishing that the appellant was put on notice that the appellee Foxworth-Galbraith Lumber Company, Inc. was expecting to be paid by the appellant. Appellant's sixth point of error is overruled as to appellees Sawyer and Geurin and sustained as to appellee Foxworth-Galbraith Lumber Company, Inc.

In his seventh point of error, appellant contends that the trial court erred in making any findings with respect to the payment and performance bond required by TEX.REV.CIV.STAT.ANN. art. 5160 (Vernon Supp.1982–1983) since there is no proof appellees were relying on such bond when they performed work or furnished materials.

Appellees allege that appellant's failure to secure a performance and payment bond pursuant to art. 5160 warranted the trial court's entry of judgment in favor of appellees. Article 5160(A) provides:

Any person or persons, firm, or corporation, ... entering into a formal contract in excess of $25,000 with this State, ... or any school district in this State, ... shall be required before commencing such work to execute ... the statutory bonds as hereinafter prescribed ...

(a) A Performance Bond in the amount of the contract conditioned upon the faithful performance of the work ... Said bond shall be solely for the protection of the State or the governmental authority awarding the contract, ...

(b) A Payment Bond, in the amount of the contract, solely for the protection of

all claimants supplying labor and material ...

 This statutory requirement for these bonds is to protect the subcontractors. *Ingleside, supra,* at 945. In *Ingleside,* a case very similar to the one at bar, the court discussed the fact that a subcontractor on a public building is prohibited from asserting a mechanic's and materialman's lien normally available to him on a private construction project. Although the bond requirement can be waived by an agency of the State, it is also entirely reasonable for a subcontractor to assume that the agency, in executing a construction contract covered by art. 5160, will abide by the law and require the general contractor to provide such bonds. If the governmental agency chooses to waive the bond, then it should not be permitted to claim that a subcontractor's only remedy for nonpayment is against the general contractor on the bond the agency did not require and that it knew the contractor did not have. *Ingleside, supra.* Further, the appellant cites no case which conflicts with the court's opinion in *Ingleside, supra.* Appellant's seventh point of error is overruled.

In his eighth and final point of error, appellant asserts that the trial court erred in awarding attorney's fees to appellees. More specifically, he argues that although there was testimony as to the reasonableness of the fees, there was no testimony that the services were necessary.

 Appellees base their claim for attorney's fees on TEX.REV.CIV.STAT. ANN. art. 2226 (Vernon Supp.1982–1983). This article does not require proof that attorney's fees are necessary apart from testimony as to their reasonableness. Attorneys for each of the appellees testified in detail as to the time expended, the expenses incurred, and the reasonableness of their charges. Furthermore, the attorneys for Sawyer and Geurin testified that such services were necessary. The allowance of attorney's fees is vested in the sound discretion of the trial court, and its judgment will not be reversed without a clear showing of abuse of that discretion. *Rick Fur-*

*niture Distributing Co. v. Kirlin*, 634 S.W.2d 738, 742 (Tex.App.—Dallas 1982, writ ref'd n.r.e.). Appellant's final point of error is overruled.

The judgment of the trial court for the appellees Sawyer and Geurin is affirmed, but we reverse and render judgment that appellee Foxworth-Galbraith take nothing by its suit. Costs are charged two-thirds to the appellant and one-third to appellee Foxworth-Galbraith.