**GREENVILLE INDEPENDENT SCHOOL DISTRICT, Appellant,**

v.

**B & J EXCAVATING, INC., Appellee.**

No. 05–84–00423–CV.

Court of Appeals of Texas,
Dallas.

May 23, 1985.

Rehearing Denied July 1, 1985.

J. Harris Morgan, Greenville, for appellant.

W. Kyle Gooch, Dallas, for appellee.

Before STEPHENS, ALLEN and McCLUNG, JJ.

ALLEN, Justice.

Greenville Independent School District ("GISD") appeals from a summary judgment rendered in favor of B & J Excavating, Inc. We hold that as a matter of law the summary judgment based on breach of a statutory duty was granted in error;

therefore, we reverse and render judgment for GISD on that point. Any remaining causes of action are remanded for trial.

The record shows that GISD awarded a prime contract to Hudler-Tye Construction for the remodeling of several elementary schools. Hudler-Tye then entered into a subcontract with B & J for the furnishing of material and labor at the various schools. B & J performed the required work and invoiced Hudler-Tye for $14,-303.00. Hudler-Tye was subsequently placed into bankruptcy and B & J was never paid. Although Hudler-Tye was required by the terms of the McGregor Act, TEX.REV.CIV.STAT.ANN. art. 5160 (Vernon Supp.1985), to provide both a payment bond and a performance bond, no payment bond was provided. Having no surety to look to for payment, B & J sued GISD alleging breach of a third party beneficiary contract, breach of the statutory duty imposed by the McGregor Act, and unjust enrichment.

B & J's motion for summary judgment, however, was based solely on GISD's breach of the McGregor Act. GISD's answer to B & J's motion was twofold: (1) that negligent breach of a statutory duty creates a fact issue; and (2) that GISD was immune from breach of the statutory duty under the doctrine of sovereign immunity. GISD also filed their own motion for summary judgment alleging that: (1) B & J was not a third-party beneficiary of the GISD/Hudler-Tye contract as a matter of law; and (2) that GISD owed no duty to the B & J under the McGregor Act. B & J's motion for summary judgment was granted and GISD's motion was denied.

■■■ In their first point of error, GISD argues that its motion for summary judgment was erroneously denied because B & J was not a third-party beneficiary to the GISD/Hudler-Tye contract. When two or more parties file motions for summary judgment and one is granted and the other overruled, we must determine on appeal all questions presented including the propriety of the order overruling the losing party's motion. *Tobin v. Garcia*, 159 Tex. 58, 316

S.W.2d 396, 400 (1958). However, it is the appellant's duty to present us with a record sufficiently complete to clearly show the action of the trial court and the error of which he complains. If the record brought up on appeal is incomplete, every reasonable presumption will be indulged in favor of the trial court's ruling, and a reversal will not be ordered unless it appears impossible that the ruling could be upheld. *Cooper v. Bowser*, 610 S.W.2d 825, 828 (Tex. Civ.App.—Tyler 1980, no writ).

■■■ In the case at bar, we do not have before us the contract between GISD and Hudler-Tye. "It is well settled that one claiming to be a third party beneficiary succeeds or fails according to the provisions of the contract sued upon." *Carnes Corp. v. Thermal Supply, Inc.*, 359 S.W.2d 99, 100 (Tex.Civ.App.—Houston 1962, no writ). Since our record does not contain the GISD/Hudler-Tye contract, it is impossible for us to determine what liabilities and obligations, if any, are described therein. Therefore, allowing for every reasonable presumption in favor of the trial court's ruling, we cannot say that the trial court erred in denying GISD's motion for summary judgment based on the claim that B & J was not a third party beneficiary. This point of error is without merit.

Secondly, GISD argues that the trial court erred in granting B & J's motion for summary judgment and in denying GISD's motion for summary judgment because GISD neither owed nor breached any contractual or statutory duty to B & J to ensure that Hudler-Tye would provide sufficient performance and payment bonds as required. In response, B & J claims that GISD's failure to approve any payment bond was a breach of the McGregor Act and urges us to apply the implication doctrine to hold GISD liable.

■■■ To determine if GISD has violated the McGregor Act, we must look at the provisions of the statute. Article 5160 A provides:

Any ... "prime contractor," entering into a formal contract in excess of $25,-

000 with this State ... or any school district in this state ... authorized ... to enter into contractual agreements for the construction, alteration or repair of any public building ... shall be required before commencing such work to execute to the aforementioned governmental authority ... the statutory bonds as hereinafter prescribed ...

[T]he bonds shall be payable to the governmental awarding authority concerned, and shall be approved by it as to form. Any bond furnished by any prime contractor in an attempted compliance with this Act shall be treated and construed as in conformity with the requirements of this Act as to rights created, limitations thereon, and remedies provided.

(a) A Performance Bond in the amount of the contract conditioned upon the faithful performance of the work in accordance with the plans, specifications, and contract documents. Said bond shall be solely for the protection of the State or the governmental authority awarding the contract, as the case may be.

(b) A Payment Bond, in the amount of the contract, solely for the protection of all claimants supplying labor and material as hereinafter defined, in the prosecution of the work provided for in said contract, for the use of each such claimant.

In determining the meaning of a statute, the dominant consideration is to ascertain the intention of the Legislature. *Jones v. Del Andersen and Associates*, 539 S.W.2d 348, 350 (Tex.1976) (and cites therein). The intention is to be found in the language of the statute itself. *Jones*, 539 S.W.2d at 350. The intent of the Legislature in passing the McGregor Act was to protect persons furnishing material or labor in the construction of public works where a lien could not be secured for their protection. The legislature chose to protect this group by requiring the prime contractor to furnish a payment bond payable to the awarding governmental authority. *Overstreet v. Houston County*, 365 S.W.2d 409, 413 (Tex.1963). Further, since there can be no lien on public property, the stat-

ute expressly provides that the principal together with the surety will be held liable to a subcontractor for the reasonable value of the unpaid balance on the contract at the time of making the claim. TEX.REV.CIV. STAT.ANN. art. 5160 B (Vernon 1971); *Citadel Construction Co. v. Smith*, 483 S.W. 283, 288 (Tex.App—Austin 1972, writ ref'd n.r.e.)

To justify their position that failure of a public body to obtain a payment bond from a prime contractor results in public body liability, B & J relies on *City of Ingleside v. Stewart*, 554 S.W.2d 939 (Tex.Civ.App.— Corpus Christi 1977, writ ref'd n.r.e.) and *Prairie Valley Independent School District v. Sawyer*, 665 S.W.2d 606 (Tex.App. —Fort Worth 1984, writ ref'd n.r.e.). Although both cases held the involved public authority liable for amounts owed to the respective subcontractors in the absence of a payment bond, those cases factually differ from the one at bar. In both cases, the public authority assumed the position of general contractor. A general contractor is required to execute the payment bond or be held liable for the subcontractor's furnished labor or material under their contract. In the case at bar, GISD never assumed the position of general contractor. Moreover, in both cases relied on by B & J, the public authority was sued under an implied contract based on the theory of quantum meruit. No summary judgment evidence was presented in the instant case that would meet the required elements necessary for recovery under quantum meruit. Consequently, these two cases are not dispositive of the case at bar.

■ The question before us is whether the contracting governmental authority can be held liable to a subcontractor for failure of the prime contractor to obtain the required payment bond. Initially, we point out that at common law a public body could not be made answerable to unpaid creditors for material furnished or labor performed in the course of their work. *Mosher Mfg. Co. v. Equitable Surety Co.*, 229 S.W. 318, 321 (Tex.Comm'n App.1921, opinion

adopted). When, however, "a statute creates a liability unknown to the common law, or deprives a person of a common law right, the statute will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview." *Satterfield v. Satterfield,* 448 S.W.2d 456, 459 (Tex.1969).

After review of the McGregor Act, we hold that it is plain and unambiguous; therefore, the statute must be enforced according to its words. *Central Education Agency v. Independent School Dist. of City of El Paso,* 152 Tex. 56, 254 S.W.2d 357, 360 (1953). The statutory duty placed on the contracting governmental authority in the McGregor Act is simply a requirement that the bonds "shall be approved by it as to form." The duty of the government, therefore, rests upon what the language "approved by it as to form" means. Since the Legislature did not specifically define the above words or phrase, we will interpret the words using their ordinary meaning. *Satterfield,* 448 S.W.2d at 459. The word "approve" is commonly understood to mean ratification of an act done by another. For instance, "approve" has been defined to mean: "confirm, ratify, sanction, or consent to some act or thing done by another." *Blacks Law Dictionary* 94 (5th ed. 1979). Also, *Webster's Ninth New Collegiate Dictionary* 98 (1983) defines approve as "to give formal or official sanction to: ratify." Applying these definitions to the facts here, we hold that the words "approved by it as to form" do not place a duty on the contracting governmental authority to ensure that a payment bond is issued. The duty to issue a payment bond is on the prime contractor. The governmental authority's duty is to accept or ratify the payment bond *after* the prime contractor fulfills his obligation to execute the payment bond.[1]

Therefore, to reiterate, we hold that Hudler-Tye as a general contractor was required to furnish a payment bond, payable to GISD, for the protection of B & J. GISD, however, had no statutory duty to force Hudler-Tye to provide the payment bond to the extent that their failure to do so would give rise to a cause of action against them by the subcontractor. GISD's statutory duty was simply to approve the payment bond when and if Hudler-Tye provided it. Although some state statutes (similar to the McGregor Act) specifically place a duty on the contracting public body to ensure that the prime contractor execute the payment bond and some state statutes expressly impose liability on the public body for its failure to require the bond, *see* Annot., 64 A.L.R. 679 (1929), the Texas McGregor Act does neither.

Since we are following the McGregor Act as written, the implication doctrine has no application. The Texas Legislature has chosen to place liability, resulting from unpaid laborers and materialmen, on the principal and surety. This statute, in some form, has been in our books since 1913. We are not authorized to add to this enactment under the guise of construction; but, we must give effect to the language of the statute as expressed therein. *Second Injury Fund v. Keaton,* 162 Tex. 250, 345 S.W.2d 711, 714 (1961); *State v. Millsap,* 605 S.W.2d 366, 369 (Tex.Civ.App.—Beaumont 1980, no writ). Accordingly, we reverse the summary judgment granted by the trial court in favor of B & J against GISD and render summary judgment on GISD's motion denied by the trial court that B & J take nothing from GISD pursuant to a cause of action based on a breach of statutory duty.

Since we hold that GISD did not breach any statutory duty imposed on them by the McGregor Act, we need not address GISD's third point of error dealing with the doctrine of sovereign immunity.

The summary judgment granted to B & J against GISD is reversed. We render judg-

---

**1.** A majority of states, with statutes similar to ours, hold that a subcontractor is precluded from recovery against a public body when he fails to ascertain if a bond is given. *See* Annot., 64 A.L.R. 679 (1929).

ment on that part of GISD's summary judgment motion which directs that B & J take nothing from GISD pursuant to a cause of action based on breach of a statutory duty. This cause is remanded to the trial court for disposition on any remaining theories of recovery or defense.

STEPHENS, J., dissents.

STEPHENS, Justice, dissenting.

I respectfully dissent. The majority holds that the only statutory duty placed upon a contracting governmental authority by the McGregor Act, TEX.REV.CIV. STAT.ANN. art. 5160 (Vernon Supp.1985), "is simply a requirement that the bonds 'shall be approved as to form.'" The majority interprets this to mean that in this instance GISD was only under an obligation to "approve the payment bond *when and if* Hudler-Tye provided it" (emphasis added). I cannot agree.

The majority, by focusing on the duty imposed on the contracting governmental authority, ignores the statute's language that the prime contractor "shall be required before commencing such work to execute to the ... governmental authority the statutory bonds." The statutory language imposes an active duty on the governmental authority to require the bonds, rather than a passive duty of accepting the bonds only if submitted.

When interpreting a statute, the fundamental and primary consideration of a court is to ascertain and give effect to the legislative intent expressed therein. *Jessen Associates, Inc. v. Bullock*, 531 S.W.2d 593 (Tex.1975). In ascertaining that intent, a court must examine the entire statute and not merely an isolated portion of it. *State v. Terrell*, 588 S.W.2d 784 (Tex.1979).

The clear and unambiguous intention of the legislature in enacting the requirement for a payment bond was to protect those persons providing labor or materials for the construction, alteration, or repair of any public building. TEX.REV.CIV.STAT. ANN. art. 5160 A(b) (Vernon Supp.1985). It was not intended to protect the contract-

ing governmental authority. *See Prairie Valley Ind. School Dist. v. Sawyer*, 665 S.W.2d 606, 611 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); *City of Ingleside v. Stewart*, 554 S.W.2d 939, 945 (Tex.Civ.App. —Corpus Christi 1977, writ ref'd n.r.e.).

Although the majority correctly notes that both *Sawyer* and *Stewart* may be distinguished from the case at bar, both on their facts and on the theories upon which they were decided, the reasoning of those opinions—that it is reasonable for a subcontractor to assume that the governmental authority, in executing a construction contract covered by art. 5160, *"will follow the law and require the general contractor to provide a bond"*—nevertheless applies. *Stewart*, 554 S.W.2d at 945; *Sawyer*, 665 S.W.2d at 611. If the governmental authority fails to follow the law, then it should not be heard to claim that the subcontractor's only remedy for nonpayment is against the general contractor on the bond that it did not require. *Stewart*, 554 S.W.2d at 945.

The majority's opinion frustrates the legislative intent to protect subcontractors and to provide security where none existed at common law. It ignores the statute's language, and it places the duty of insuring that a bond is provided by the general contractor, a party who might attempt to reduce its costs by not providing that bond. Although the statute does not explicitly impose liability on a contracting governmental authority that fails to require a bond, the imposition of such liability is clearly consistent with the legislative intent. If the intent of the legislature is ascertained, a court must enforce that intent even though not altogether consistent with the strict letter of the statute. *Terrell*, 588 S.W.2d at 786.

For the reasons stated, I would affirm the judgment of the trial court and hold that the contracting governmental authority has a duty to require the prime contractor to provide a payment bond prior to beginning work. If the governmental authority fails to require a bond, then it

should be liable to subcontractors for the damages flowing from that failure.