James T. **MOORE** d/b/a **M & C Trucking** and **Caravan Motor Cargo, Inc.,** Appellants,

v.

The **WHITE MOTOR CREDIT CORP.,** Appellee.

No. 05–84–00032–CV.

Court of Appeals of Texas, Dallas.

Sept. 16, 1985.

Rehearing Denied April 21, 1986.

Richard E. Young, Daniel J. Sheehan, Jr., Tuttle, Sheehan, Young & Smith, Dallas, for appellants.

Rod Phelan, David C. Godbey, Hughes & Hill, Dallas, for appellee.

Before AKIN, CARVER and ELLIS [1], JJ.

ELLIS, Chief Justice (Retired).

The White Motor Credit Corp. filed suit on June 14, 1983, against James T. Moore, doing business as M & C Trucking and Caravan Motor Cargo, Inc. under three retail installment contracts and a guaranty. Moore and Caravan filed a counterclaim against White asserting the affirmative defense of usury and seeking penalties under TEX.REV.CIV.STAT.ANN. art. 5069–8.01 and art. 5069–8.02 (Vernon 1983).[2] After

---

[1] The Honorable James A. Ellis, Chief Justice, Seventh Supreme Judicial District, Retired, sitting by assignment.

[2] 5069–8.01(a) Any person who violates this Subtitle by contracting for, charging or receiving interest, time price differential or other charges which are greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest or time price differential and default and deferment charges contracted for, charged or received, and reasonable attorneys' fees fixed by the court.

5069–8.02 Any person who violates this Subtitle by contracting for, charging or receiving interest, time price differential or other charges which are in the aggregate in excess of double

trial, the jury found that White's original petition and first amended petition constituted a charge of usury but that the charging of unearned time price differential in the petitions was not intentional and resulted from a bona fide error. Acting on the jury's verdict, the trial judge rendered judgment for White and against Moore and Caravan. Moore and Caravan have appealed.

On appeal Moore and Caravan contend that the trial court erred in denying their motions for an instructed verdict and for judgment *non obstante veredicto* because: (1) as a matter of law there is no bona fide error defense under article 5069–8.02 for charging more than twice the interest allowed by law; (2) as a matter of law there is no bona fide error defense to usury charged by the filing of a sworn petition; and (3) there was no evidence supporting the submission of, and the jury's answer to, Special Issue No. 2, which concerned the bona fide error defense. By conditional cross-point, White contends that as a matter of law a pleading cannot constitute a charge of interest within the meaning of Texas usury statutes. We agree only with appellants' third contention. Accordingly, we reverse that portion of the trial court's judgment pertaining to Moore and render judgment that White take nothing from Moore and that White be assessed the penalties mandated by articles 5069–8.01 and 5069–8.02. We affirm that portion of the judgment pertaining to Caravan. Additionally, we remand the cause to the trial court for a determination of the amount of attorney's fees for which White is liable to Moore under article 5069–8.02.[3]

In March 1979 Caravan executed a sixty-month, retail installment contract for the purchase of two trucks. The cash purchase price of the trucks and the amount financed was $83,300.00; the total contract price was $111,932.64. This contract was assigned by the seller to White. On November 30, 1982, Moore entered into a forty-eight month, retail installment contract with Volvo White Truck Corporation for the purchase of thirty new trucks. The principal balance of this contract was $1,665,000.00 with a precomputed and added-on time price differential of $599,400.00 for a total gross balance of $2,264,400.00. Additionally, Moore entered into a forty-eight month, retail installment contract with Volvo December 31, 1982, for the purchase of ten new trucks. This contract had a principal balance of $511,500.00 with a precomputed and added-on time price differential of $184,140.00 for a total gross balance of $695,640.00. Both of these contracts were assigned by Volvo to White. Caravan guaranteed the two retail installment contracts executed by Moore. After default on these contracts by Moore and Caravan, White filed its original petition on June 14, 1983, seeking temporary and permanent injunctive relief as well as acceleration of the indebtedness owed to it under the retail installment contracts. White asserted that Moore owed the sum of $2,217,951.67 under the November contract and $694,190.75 under the December contract. Attached to the petition were copies of all three contracts. The amounts White sought to recover from Moore included unearned time price differential but did not rebate or credit any unearned amount. As a result, the amount of time price differential sued for under White's original petition

---

the total amount of interest, time price differential and other charges authorized by this Subtitle shall forfeit to the obligor as an additional penalty all principal or principal balance, as well as all interest or time price differential, and all other charges, and shall pay reasonable attorneys' fees actually incurred by the obligor in enforcing the provisions of this Article; provided further that any such person violating provisions of this Article shall be guilty of a

misdemeanor and upon conviction thereof shall be punished by a fine of not more than One Hundred Dollars. Each contract or transaction in violation of this Article shall constitute a separate offense punishable hereunder.

**3.** In view of our disposition of this appeal, we need not address other points of error raised by appellants and other cross-points raised by White.

was more than twice the interest[4] allowed by law.

After White filed its original petition, Moore and Caravan answered and counter-claimed, alleging that White's "claims as asserted heretofore and as asserted in [White's] Original Petition constitute charges for interest, time price differential or other charges which are greater than the amounts authorized" by law. Moore and Caravan also sought to have the allegations concerning a temporary injunction stricken from White's original petition because the petition was not verified by affidavit, as required by TEX.R.CIV.P. 682. White thereafter filed its verified, first amended petition.

Trial commenced on July 25, 1983. Phyllis DeWeirdt, retail collection manager for the southwest regional office of The White Motor Credit Corporation, testified on direct examination concerning the correct net payoff amounts. In the middle of appellants' cross-examination of DeWeirdt, Charles Cunningham, counsel for White, realized that the true basis of appellants' counterclaim was the figures in the petition. Cunningham immediately asked the court to permit White to withdraw its announcement of ready, to permit White to amend its petition to plead bona fide error as a defense, and to grant White a continuance because he, Cunningham, was a material witness. The trial court granted the motion.

On September 19, White filed a second amended petition seeking the correct damages, asserting that the pleadings should not be construed as a "charge" of usurious interest or time price differential and asserting the statutory defense of bona fide error. The second trial in this cause commenced two days later.

At the September 1983 trial, DeWeirdt testified that as a result of appellants' answer and counterclaim she was asked by White's counsel to verify White's first amended petition in order to comply with Rule 682. DeWeirdt also testified that in

verifying the pleading she had *not* checked to see whether the numbers in the original petition were correct, but had only verified that the amended complaint was the same as the original. DeWeirdt testified that she had relied on the statements of White's counsel that he had not made any substantive changes in the second document.

Cunningham, counsel for White at the time the original and first amended petitions were filed, also testified at the second trial. He stated that at the time appellants filed their counterclaim and answer he was not aware that appellants' usury claim referred to the charges set forth in White's original petition. As a result, he merely required DeWeirdt to verify the amended pleading, not check the figures.

■ We begin our consideration of this appeal by addressing White's cross-point, which contends that as a matter of law a pleading cannot constitute a "charge" of interest within the meaning of Texas usury statutes. This contention is without merit. It has been held that the filing of a petition demanding the payment of sums that include unearned interest constitutes a "charging" of interest. *Nationwide Financial Corp. v. English*, 604 S.W.2d 458, 461 (Tex.Civ.App.—Tyler 1980, writ dism'd); *Moore v. Sabine National Bank of Port Arthur*, 527 S.W.2d 209, 212 (Tex. Civ.App.—Austin 1975, writ ref'd n.r.e.). *See Tyra v. Bob Carroll Construction Co.*, 639 S.W.2d 690, 691 (Tex.1982).

■ We turn now to address the contentions of Moore and Caravan. Appellants first contend that the trial court erred in denying their motions for instructed verdict and for judgment *non obstante veredicto* because as a matter of law there is no bona fide error defense available under article 5069–8.02. We disagree with this contention. Article 5069–8.02 provides:

> Any person who violates this Subtitle by contracting for, charging or receiving interest, time-price differential or other charges which are in the aggregate in

4. As suggested in appellant's brief, we shall, for convenience, refer to time price differential as

"interest" although we recognize the legal distinction between these terms.

excess of double the total amount of interest, time-price differential and other charges authorized by this Subtitle shall forfeit to the obligor *as an additional penalty* all principal or principal balance, as well as interest or time-price differential and all other charges, and shall pay reasonable attorney's fees actually incurred by the obligor in enforcing the provisions of this article; provided further that any such person violating provisions of this article shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than One Hundred Dollars. [emphasis added]

Unlike article 5069–8.02, article 5069–8.01 expressly includes a provision concerning a bona fide error defense:

A person may not be held liable in any transaction brought under this Article for a violation of this Subtitle ... if such person shows by a preponderance of evidence that (1) the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid such violation....

TEX.REV.CIV.STAT.ANN. art. 5069–8.-01(f) (Vernon 1983). Appellants contend that because article 8.02 does not *expressly* provide for a bona fide error defense the defense is not available to a creditor accused of violating article 5069–8.02. We do not agree. Article 5069–8.02 provides that if a creditor charges or receives interest which exceeds more than double the amount authorized by law he shall forfeit to the debtor the principal, as well as all interest charges, "as an *additional* penalty." There can be an "additional penalty," however, *only* if the penalty provisions of article 5069–8.01 have first been triggered. If article 5069–8.01 penalties are avoided because of a bona fide error there can be no "additional" penalties under article 5069–8.02. Accordingly, we conclude that the legislature obviously intended that the bona fide error defense provided for in article 5069–8.01 be available as a defense to claims brought under article 5069–8.02.

■ Appellants next contend that the trial court erred in denying their motions for instructed verdict and for judgment *non obstante veredicto* because as a matter of law there is no bona fide error defense to usury charged by the filing of a sworn petition. We disagree. Appellants rely on *Rick Furniture Distributing Co., Inc. v. Kirlin*, 634 S.W.2d 738 (Tex.App.—Dallas 1982, writ ref'd n.r.e.), to support their contention. In that case, Rick Furniture Distributing Company sued to collect money due under a retail installment contract. The collection manager verified the petition and stated, under oath, that there were no set-offs, charge-backs or other credits outstanding. The defendants filed a counterclaim alleging violations of the Texas Consumer Credit Code, TEX.REV.CIV.STAT. ANN. art. 5069– *et seq.* The trial court found that the plaintiff's original petition constituted a charging of unearned time price differential. On appeal, Rick Furniture argued, *inter alia,* that article 5069–8.02 was unconstitutional because it did not provide for a bona fide error defense. We held that "[o]n the facts of this case, the defense of bona fide error could not have been raised even if available." 634 S.W.2d at 792.

Conversely, White contends that *Rick Furniture* is distinguishable because in *Rick Furniture* the creditor expressly denied the debtor's right to an interest rebate. In the instant case, DeWeirdt's affidavit merely stated that the petition was true and correct. Appellants' entitlement to an unearned interest rebate was not mentioned. We fail, however, to see a distinction.

Instead, the question before us is whether *Tyra v. Bob Carroll Construction Co.,* 639 S.W.2d 690 (Tex.1982), overrules our holding in *Rick Furniture.* In *Tyra* the supreme court, construing TEX.REV.CIV. STAT.ANN. art. 5069–1.06 [5] (Vernon Supp.

---

5. Article 5069–1.06(1) and (2) are set forth below:

(1) Any person who contracts for, charges or receives interest which is greater than the

1985), held that bona fide error can exist in a case with facts similar to those in the case at bar.

In *Tyra,* an action on a sworn account, Bob Carroll sued Tyra for payment for construction work performed by Carroll for Tyra. Tyra filed a counterclaim asserting that Carroll, in its original petition, had "charged" interest in excess of double the amount allowed by law. No charges for interest were made by Carroll in any of its prior eight invoices or two demand letters nor were any interest charges reflected in Carroll's accounts receivable ledger. Although the court of civil appeals held that Carroll did not charge usurious interest because the pleading had been amended to delete the claim for usurious interest, the supreme court *assumed* there was a usurious charge of interest and held that the defense of bona fide error was established. 639 S.W.2d at 691.

Although we realize that in *Tyra* the supreme court was construing articles 5069–1.06(1) and (2) rather than articles 5069–8.01 and 8.02, the penalty provisions of both statutes are virtually identical. Consequently, we deem it incongruous to construe the first statute to allow a defense of bona fide error in the face of a charge of usurious interest in a verified pleading while holding that the other does not.

Our conclusion is supported by the Statutory Construction Act. In construing a statute a court may consider, *inter alia,* the following:

(1) the object sought to be attained;

(2) the legislative history; and

(3) the consequences of a particular construction.

TEX.REV.CIV.STAT.ANN. art. 5429b–2, § 3.03 (Vernon Supp.1985). The "Declaration of Intent" included in the enactment of the law revising the statutes relating to loans and lenders states that the object of the legislature in enacting the statute was to provide firm and effective penalties for usury. The specific intent was "to protect the citizens of Texas from abusive and deceptive practices now being perpetrated by unscrupulous operators, lenders, and vendors in both cash and credit consumer transactions." Act of May 23, 1967, ch. 274, 1967 Tex.Gen.Laws 608, 609. This legislative declaration does not show an intent to impose the severe penalties provided under Articles 5069–1.06, 5069–8.01 or 5069–8.02 upon those who violate the statute due to accidental or bona fide error. As the "Declaration of Legislative Intent" indicates, these articles are both remedial and penal in nature.

Moore and Caravan seek to enforce the penal provisions of the statute; we must, therefore, consider the statute as penal for the purpose of construing it. *Board of Insurance Commissioners v. Great Southern Life Insurance Co.,* 150 Tex. 258, 239 S.W.2d 803, 809 (1951). In Texas, a penal statute must be strictly construed against imposing the penalty. *Agey v. American Liberty Pipe Line Co.,* 141 Tex. 379, 172 S.W.2d 972, 974 (1943). A statute which provides penalties for excessive interest rates should be construed in such a way as to give the lender "the benefit of the legislative doubt against imposing the penalties imposed by the statute." *PJM, Inc. v. Walter Clark Advertis-*

---

amount authorized by this Subtitle, shall forfeit to the obligor three times the amount of usurious interest contracted for, charged or received, such usurious interest being the amount the total interest contracted for, charged, or received exceeds the amount of interest allowed by law, and reasonable attorney fees fixed by the court except that in no event shall the amount forfeited be less than Two Thousand Dollars or twenty percent of the principal, whichever is the smaller sum; provided, that there shall be no penalty for any usurious interest which results from an accidental and bona fide error.

(2) Any person who contracts for, charges or receives interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit as an additional penalty, all principal as well as interest and all other charges and shall pay reasonable attorney fees set by the court; provided further that any such person violating the provisions of this section shall be guilty of a misdemeanor and upon conviction thereof shall be punished by fine of not more than One Thousand Dollars. Each contract or transaction in violation of this section shall constitute a separate offense punishable hereunder.

*ing, Inc.*, 624 S.W.2d 282, 286 (Tex.App.—Dallas 1981, writ ref'd n.r.e.). The language in *Rick Furniture* upon which Moore and Caravan rely is mere dicta. In addition, it would be incongruous to hold that the bona fide error defense would be unavailable under article 5069–8.02 *merely because the pleadings are verified.* We note that the bona fide error defense is available in a suit on an open account, required to be verified by TEX.R.CIV.P. 185, filed under article 5069–1.06 of the Consumer Credit Code. In light of the above, we conclude that the defense of bona fide error is available under articles 5069–8.01 and 5069–8.02 to a creditor accused of charging usurious interest by filing a sworn petition.

Next, appellants contend that the trial court erred in denying their motions for instructed verdict and for judgment *non obstante veredicto* because there was no evidence supporting the submission of, and the jury's answer to, Special Issue No. 2, which inquired:

Do you find from a preponderance of the evidence that the amounts in paragraph 4 of Plaintiff's Original Petition or Plaintiff's First Amended Original Petition were not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid such errors?

The jury answered "yes" as to both the original and the amended petitions. Appellants argue that because White did not follow the procedure that it had routinely used in the past to avoid violations of the Consumer Credit Code and because White had no procedure at all for checking amended petitions, the charging of unearned interest by White did not result "notwithstanding the maintenance of procedures" as required by the statute. We agree.

■ There are two essential elements of the defense of bona fide error. First, there must be a showing that bona fide error exists. Second, there must be a showing that the error was made notwithstanding the maintenance of procedures adopted to avoid the error. *Ballard v. Hillcrest State Bank of University Park*, 592 S.W.2d 373,

374 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.); *Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871, 878 (7th Cir. 1976), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 699 (1978). We shall, for the purposes of this opinion, assume, without deciding, that the error at issue—the insertion into White's petition of incorrect payout figures from a computer printout which contained the correct figures—was a "bona fide" error as required by article 5069–8.01(f). The question, then, is whether the error occurred "notwithstanding the maintenance of procedures reasonably adopted to avoid such violation." We conclude that it did not and, accordingly, hold that the bona fide error defense is not available to White in the instant case.

■ The statutes that permit a bona fide error defense require proof that reasonable procedures are used to avoid the particular error in question. *Callaway v. East Texas Government Credit Union*, 619 S.W.2d 411, 415 (Tex.Civ.App.—Tyler 1981, writ ref'd n.r.e.). Article 5069–8.01(f) provides that not only must procedures designed to avoid bona fide error be established by the creditors if they seek exemption under this article, but also that these procedures be followed time in and time out. *Seitz v. Lamar Savings Assoc.*, 618 S.W.2d 142, 146 (Tex.Civ.App.—Austin 1981, no writ); *Mirabal*, 537 F.2d at 879. Appellants argued at trial and contend on appeal that White's normal procedure for calculating and rechecking the dollar amounts in its original pleadings involves ten steps and that these ten steps were not followed. White asserts that only three steps were involved. We conclude that regardless of how many "steps" are actually counted the basic procedure employed by White is the computation of the net payoff figure, transportation of that figure to outside legal counsel, and review of the drafted petition by qualified personnel. In the instant case, DeWeirdt testified that she reviewed the pleading but *did not check the figures* in either the original or the first amended petition. Accordingly, we agree with appellants' contention that there was no evidence that White *maintained* its procedure.

The most important step in White's entire procedure was the check of the net payoff figures by qualified personnel. White's argument that requiring DeWeirdt to have actually checked the figures would render the bona fide error defense illusory is without merit. If DeWeirdt had actually checked the figures in the petition, but compared them to the wrong figures on the computer printout, there would have been some evidence that the procedures were followed in this case and the bona fide error defense would have been available. White's argument that because this is the only case of its kind in White's thirty year history the procedures are successful and maintained is also without merit. Although this is some evidence that the procedures may have been followed in the past, it is not proof that the procedures are followed time in and time out. *Mirabal,* 537 F.2d at 879. Consequently, we hold that because White failed to maintain its usual procedure in this instance it cannot avail itself of the bona fide error defense.

Finally, Moore and Caravan argue that the trial court erred in entering judgment against Caravan under the guaranty because the guaranty made Caravan liable only for amounts that Moore owed. It is their contention that Moore will owe no indebtedness or obligation to White if this case is reversed and rendered and that, therefore, Caravan will owe nothing. We disagree.

■■■ A guarantor's liability on a debt is measured by the principal's liability unless a more extensive or a more limited liability is expressly set forth in the guaranty agreement. *Houston Furniture Distributors, Inc. v. Bank of Woodlake, N.A.,* 562 S.W.2d 880, 884 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ). Articles 5069–8.01 and 5069–8.02 provide in plain

language that the prescribed penalties be forfeited "to the obligor." This language has been interpreted to be evidence of the legislature's intent that the usury defense remain personal to the debtor; therefore, the penalty forfeitures are restricted to the immediate parties to the transaction creating the usury defense. *Houston Sash and Door Co. v. Heaner,* 577 S.W.2d 217, 222 (Tex.1979). The guarantor of a note usurious as to the borrower, but whose individual contract with the lender does not provide for usurious interest, cannot avoid his liability on the ground that usurious interest was paid by the principal debtor; he may, however, plead usury in his contract. *Id.; Micrea, Inc. v. Eureka Life Insurance Co. of America,* 534 S.W.2d 348, 354 (Tex.Civ. App.—Fort Worth 1976, writ ref'd n.r.e.). Only where the underlying obligation is void for illegality will the guaranty fall with it. *Houston Sash and Door,* 577 S.W.2d at 222.

■■■ Caravan executed a separate contract of guaranty under which it guaranteed the "punctual payment and prompt performance of any and all indebtedness or obligation of any kind which [Moore] may now owe or which it may at any time owe." The guaranty shows that no excessive rate of interest was contracted for, charged, or received.[6] Because Moore defaulted on its obligations under the November and December contracts, Caravan is liable for the amounts due under those contracts.

That portion of the judgment which pertains to Caravan is affirmed. That portion of the judgment which pertains to Moore is reversed and rendered in part and reversed and remanded in part.

CARVER, J., dissents.

CARVER, Justice, dissenting.

I respectfully dissent. The trial jury found that White's demands, in its original

---

**6.** We have concluded that both White's original and first amended original petition "charged" usurious interest as to Moore because the figures contained therein did not include a rebate or credit for any unearned interest. It is important to note that in neither of these petitions was Caravan sued as a guarantor of Moore's indebtedness under Moore's two contracts with White, but rather was sued only in its capacity as a principal debtor under Caravan's own installment purchase contract with White. Caravan was not sued in its capacity as guarantor for Moore's indebtedness until White filed its second amended original petition, which did not "charge" usurious interest.

petition and in its first amended original petition, were not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid such error.

The evidence of Phyllis DeWeirdt, retail collection manager of White's regional office, described a system of White's which avoided such an error for many years as well as described this first failure of the system through human error which bore no marks of being anything but unintentional. Charles Cunningham, former counsel in the case but who had withdrawn, further testified that the error was unintentional on his part and was the result of bona fide error on his part, aside from White. There was no direct evidence contradicting these witnesses. The jury was entitled, and did, believe them.

I decline to constitute myself, or this court, as an appellate jury claiming a greater perception than the trial jury as to the "intentions" of a litigant or as to the "bona fide" character of a litigant's error in pleadings. I would affirm on the jury's finding.