NATIONWIDE FINANCIAL
CORPORATION,
Appellant,

v.

Freddie E. ENGLISH, Appellee.

No. 1364.

Court of Civil Appeals of Texas,
Tyler.

July 31, 1980.

Rehearing Denied Sept. 11, 1980.

Miles H. Appleberry, San Antonio, for appellant.

Barry Snell, Bayne, Snell & Krause, San Antonio, for appellee.

MOORE, Justice.

This is an appeal from a summary judgment sustaining a claim for usury. The litigation commenced on March 17, 1977, when plaintiff, Freddie E. English, instituted suit against defendant, Nationwide Financial Corporation (Nationwide), claiming various violations of the Texas Consumer Credit Code[1] in a retail installment contract in connection with the purchase of a mobile home. Nationwide answered with a general denial and filed a counterclaim, alleging that since English was in default, Nationwide had elected to accelerate the payments and demand payment of the entire unpaid balance. In response, English, by an amended petition filed on March 9, 1978, alleged that by its counterclaim, Nationwide had charged in excess of twice the amount of time-price differential permitted by law and was therefore guilty of usury. English prayed for a recovery of twice the amount of time-price differential and default charges as provided for by Article 5069–8.01(a),[2] and for a forfeiture of the entire principal and all other charges as provided for by Article 5069–8.02.[3] English then filed a motion for partial summary judgment. After a hearing, the trial court awarded English a partial summary judgment upon his claim for twice the amount

1. Tex.Rev.Civ.Stat.Ann. 5069–7.01 et seq. (Vernon 1971 & Supp. 1971–79). All references to statutory articles are to the Texas Consumer Credit Code unless otherwise specified.

2. Article 5069–8.01(a) provides:
Any person who violates this Subtitle by contracting for, charging or receiving interest, time price differential or other charges which are greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest or time price differential and default and deferment charges contracted for, charged or received, and reasonable attorneys' fees fixed by the court.

3. Article 5069–8.02 provides:
Any person who violates this Subtitle by contracting for, charging or receiving interest, time price differential or other charges which are in the aggregate in excess of double the total amount of interest, time price differential and other charges authorized by this Subtitle shall forfeit to the obligor as an additional penalty all principal or principal balance, as well as all interest or time price differential, and all other charges, and shall pay reasonable attorneys' fees actually incurred by the obligor in enforcing the provisions of this Article . . . . .

of time-price differential and default charges in the amount of $18,611.60, and the court further decreed a forfeiture of all unpaid principal, finance charges, and other charges due and owing under the retail installment contract. After a hearing with regard to English's claim for attorney's fees, the trial court entered a final judgment incorporating the provisions of the partial summary judgment together with an award for attorney's fees. The judgment recites that "[a]ll relief sought or requested by any party herein, not specifically granted is hereby denied."[4] Nationwide perfected this appeal.

We reverse and remand.

On February 14, 1975, English entered into a real estate contract with Mobile America[5] in payment of a mobile home. At the time the contract was signed, it was contemplated by the parties that the contract would be assigned to Nationwide. Under the terms of the agreement, English promised to pay an agreed price of $21,342.25, which included a finance charge of $8,705.80. The monthly payments, including the finance charge, was precomputed so that English was to pay the sum of $168.69 per month for 120 months commencing on March 20, 1975. After the contract had been assigned to Nationwide, English continued to make payments through September 1, 1977, totaling $5,870.18.

On November 30, 1977, Nationwide, in response to interrogatories, gave the following answers: "26. What do you contend is the present balance under the contract made the basis of this suit? *Answer* $14,432.62. 27. What do you contend is the net payoff, after allowing credit for unearned interest and unearned insurance premiums, under the contract made the basis of this suit? *Answer* $9,959.51—does not include Mobile OWNERS INSURANCE cancellation (unable to calculate)."

On March 9, 1978, Nationwide filed its counterclaim, accelerating the payments. The company sought judgment for the sum of $14,432.62, the entire balance due on the contract, which amount included unearned time-price differential in the amount of $4,473.11. There is nothing in the original counterclaim showing that Nationwide offered to rebate any of the unearned finance charge.

Shortly after English filed his motion for summary judgment seeking a recovery of $18,611.60 (twice the amount of time-price differential and default charges allegedly made by Nationwide), Nationwide amended its counterclaim and alleged that after deducting all unearned time-price differential and finance charges, the balance due and owing amounted to $9,416.49. Accordingly, it sought judgment in the amount of $9,416.49 rather than the $14,432.62 sued for in its original counterclaim.

Nationwide contends under its first point of error that the trial court erred in granting a summary judgment in favor of English because there is a genuine issue of fact as to whether it "charged" any unearned time-price differential in violation of the Code. It further contends under this point that even if some amount of unearned time-price differential was charged, there is no summary judgment proof showing that it charged twice the amount of time-price differential authorized by the Code, and therefore the trial court erred in rendering a summary judgment for twice the time-price differential and in decreeing a forfeiture of the principal balance due under the contract.

It is Nationwide's contention that it did not "charge" *any* unearned interest, because by amending its original counterclaim and eliminating all unearned interest, it was not in violation of the Code at the time the trial court conducted a hearing on the

---

4. This ruling has the effect of denying English's claim for other violations of the Code about which he makes no complaint. Consequently, the principal issue to be determined on this appeal is whether the summary judgment proof shows as a matter of law that Nationwide charged English twice the amount of time-price differential allowed by law.

5. English originally sued Mobile America but a settlement was reached before judgment was rendered.

motion for summary judgment. Nationwide therefore concludes that there was no evidence to show that it had "charged" English with unearned interest, except in the abandoned pleading which Nationwide contends may not be considered as evidence. We are not in accord with this proposition.

It has been held repeatedly that pleadings demanding unearned interest or time-price differential constitute a charge for usurious interest. *Madden v. Harlandale Bank*, 574 S.W.2d 590, 591 (Tex.Civ.App.—Beaumont 1978, writ ref'd n. r. e.); *General Motors Acceptance Corp. v. Uresti*, 553 S.W.2d 660, 663 (Tex.Civ.App.—Tyler 1977, writ ref'd n. r. e.); *Moore v. Sabine National Bank*, 527 S.W.2d 209, 212 (Tex.Civ.App.—Austin 1975, writ ref'd n. r. e.). *See also* Note, 54 Tex.L.Rev. 652 (1976).

■ The original counterclaim filed by Nationwide seeking to recover the entire balance of the account, including unearned interest, amounted to a claim for usurious interest. As such, the original counterclaim constituted an admission against Nationwide for the purposes of summary judgment proof. *McCormick v. Stowe Lumber Co.*, 356 S.W.2d 450, 457–59 (Tex.Civ.App.—Austin 1962, writ ref'd n. r. e.); *Lesikar v. Lesikar*, 251 S.W.2d 555, 558 (Tex.Civ.App.—Galveston 1952, writ ref'd n. r. e.).

■ It is our view that Nationwide's action in amending its counterclaim so as to rebate the unearned time-price differential was not sufficient to nullify its prior violation of the Code. To allow the defendant, upon being faced with an action for penalties for overcharges, to escape liability by reducing the amount demanded to within permissible limits, would allow it to circumvent the statute. If a creditor is to be allowed to reduce the amount that he sues for after a usury claim has been asserted against him, then the penalty provided by the statute would be totally ineffective, since any violation and penalties could be erased simply by reduction of the amount sued for. *Southwestern Investment Co. v. Hockley County Seed & Delinting, Inc.*, 516 S.W.2d 136, 137 (Tex.1974). Thus, Nationwide must be held to have charged usurious interest.

This brings us to the question of whether the summary judgment proof offered by English is sufficient to establish, as a matter of law, that the amount of the unearned time-price differential charged by Nationwide amounted to twice the amount authorized by law. We have concluded that it does not.

■ The contract in question is known as a "precomputed" consumer credit transaction where the finance charge is added to the principal. The total amount is then divided into 120 installments without allocation between principal and interest. In a precomputed consumer credit transaction, where there has been a default and acceleration, the question of usury turns upon whether the creditor rebated to the debtor all of the unearned interest so that the earned interest charged prior to acceleration does not exceed the maximum amount permitted by law. Our courts have held that the date of acceleration is considered to be the date of maturity, and that the rebate of any amount less than the unearned interest due the debtor constitutes a usurious "charge" within the purview of the Code. *Southwestern Inv. Co. v. Mannix*, 557 S.W.2d 755, 765 (Tex.1977); *General Motors Acceptance Corp. v. Uresti, supra* ; *Chavez v. Aetna Finance Co.*, 553 S.W.2d 174, 176 (Tex.Civ.App.—San Antonio 1977), writ ref'd n. r. e. *per curiam*, 561 S.W.2d 799 (Tex.1978); *Moore v. Sabine National Bank, supra.*

■ Generally, unless usury appears on the face of the transaction, the burden of proving that the transaction is usurious lies upon him who attacks it. *See generally* 45 Am.Jur.2d *Interest and Usury* sec. 351 (1969); 58 Tex.Jur.2d *Usury* sec. 73 (1964). In the present case there is no summary judgment proof that the contract showing a $8,705.80 finance charge was usurious on its face.

The computation of the correct amount of the rebate due the debtor involves a complicated mathematical problem, and the result will vary according to the arithmetical for-

mula used. Three of the most common methods used to calculate the amount of the rebate are the sum of the digits method (popularly known as the rule of the 78ths), the actuarial method, and the pro rata method. Each method will produce a different amount of unearned interest (or time-price differential). *See* Comment, 10 St. Mary's L.J. 94 (1978). In the present case there is no summary judgment proof showing what formula was used to precompute the amount of the monthly installments. Nor is there any summary judgment proof showing what amount of unearned time-price differential Nationwide should have rebated in order that the earned interest charged would not be in excess of that allowed by law.

Insofar as usurious interest is concerned, the summary judgment proof consists only of the contract in question, the answers to the interrogatories quoted above and Nationwide's counterclaim. In his motion for summary judgment, English asserts that the violation of the usury provisions of the Code is determinable as a matter of law from the documents on file.

From the documentary evidence, i. e., the contract, the answers to the interrogatories, and the admissions contained in Nationwide's pleadings, we can deduce that Nationwide did not rebate any of the unearned interest prior to the filing of its original counterclaim for the entire amount of the indebtedness. Consequently, the documentary proof shows that Nationwide charged usurious interest by failing to rebate the unearned interest and thus subjected itself to the penalties under article 5069–8.01 of the Code.

English, however, does not seek a judgment for the single amount of usurious interest alone. He bases his cause of action on the theory that Nationwide charged time–price differential which was in the aggregate in excess of double the amount authorized by law and seeks penalties under article 5069–8.02. Thus, the ultimate question before us is whether the summary judgment proof shows, as a matter of law, that it charged usurious interest in an amount of twice that permitted by law so as to subject Nationwide to the penalties under article 5069–8.02.

The summary judgment recites that the trial court found that Nationwide violated the Code in that Nationwide charged unearned time–price differential in an amount more than twice the maximum allowed by law by filing its cross–petition demanding $14,432.62, which amount constitutes an overcharge of $5,244.70 in unearned time–price differential. We fail to find any summary judgment proof to support this conclusion. The only evidence before the court was the documents heretofore described. There is no testimony from any witness, expert or otherwise, showing what amount of time–price differential Nationwide should have rebated. In the absence of such proof, there is no evidence to sustain the trial court's finding that Nationwide charged twice the time–price differential authorized by law. In this case the trial judge was called upon to use his own formula and make his own "in chambers" computations, and it appears that is what he did. Just what formula he used in determining that Nationwide's failure to rebate time–price differential resulted in double the amount authorized by law is not known. Nor is there any summary judgment proof to support the accuracy of his calculations. This being a summary judgment case, the burden of proof was upon the movant to establish his entitlement to a summary judgment by conclusively proving all essential elements of his cause of action as a matter of law. Tex.R.Civ.P. 166–A; *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979); *General Motors Acceptance Corp. v. Uresti, supra.* Inasmuch as there is no summary judgment proof to explain how and why the documentary proof showed usurious time-price differential to the extent of twice that authorized by law, we are of the opinion that the movant failed to discharge his burden of proof. We hold that in situations where the time–price differential has been precomputed and there has been a default and acceleration, the plaintiff must not only

establish the documentary facts, but must go further and offer proof showing how and why those documents resulted in usury to the extent of twice the time–price differential in order to recover under the provision of article 5069–8.02. To hold that the courts are duty bound to make such computations would not only cast an onerous burden on the courts, but would leave the defendant completely in the dark as to plaintiff's theory of recovery, thereby depriving the defendant of an opportunity to join issue on the method used by the plaintiff in determining usury as well as the accuracy of his calculations. Moreover, on appeal it would mean that the appellate courts would be compelled to make their own computation in order to determine whether the judgment entered by the trial court was accurate.[6]

 In the brief, counsel for English sets out an arithmetical formula attempting to show that the unearned time–price differential charged by Nationwide amounted to more than twice the amount of time–price differential authorized by law.[7] Apparently, counsel believes that this court should either adopt his calculations or make our own calculations in order to determine whether the trial court's "in chambers" calculations were correct. It requires no citation of authorities to hold that statements contained in a brief does not constitute summary judgment proof. Moreover, we do not believe we have such duty nor do we feel qualified to make calculations especially in a precomputed consumer credit transaction. As we see it, such calculations should be left to those having some expertise in that field. In the absence of any summary judgment proof establishing the amount of unearned time–price differential that Nationwide should have rebated, and

in the absence of proof demonstrating how the failure to make the proper rebate would result in a charge of double the rate authorized by law, we fail to see how it can be said that the movant established a right to recover under article 5069–8.02 as a matter of law.[8]

In view of the conclusion reached, it will not be necessary to discuss the remaining points briefed by Nationwide.

The judgment is reversed, and the cause is remanded.

which, he claims, shows that the amount of time-price differential charged by Nationwide would not constitute twice the time price differential permitted by law.

---

6. English admits in his brief that the trial court's conclusion in the partial summary judgment that the amount of overcharge was $5,244.70 is somewhat inaccurate because he says a period of 36 months was incorrectly used as the duration of the contract before acceleration rather than 3.06 years.

7. Counsel for Nationwide sets out in his brief calculations using the sum of the digits method

8. English did not plead alternatively for a recovery under article 5069-8.01 in the event he was not entitled a recovery under article 5069–8.02.