**Troy A. SUMRALL, Jr., Appellant,**

v.

**NAVISTAR FINANCIAL CORPORATION,
Appellee.**

**No. 09–90–165 CV.**

Court of Appeals of Texas,
Beaumont.

Oct. 31, 1991.

---

James R. Montgomery, Sawtelle, Goode, Davison & Troilo, San Antonio, Leon R. Pettis, Beaumont, for appellant.

Bruce M. Partain, Wells, Peyton, Beard, Greenberg, Hunt and Crawford, Beaumont, for appellee.

Before BROOKSHIRE, BURGESS and SMITH (Retired), JJ.

## OPINION

SMITH, Justice (Retired).

This is a suit for damages for wrongful repossession and usury, and a cross action for deficiency due on notes. Troy A. Sumrall, Jr., appellant and cross appellee, initiated this suit against Navistar Financial Corporation, appellee and cross appellant, after Navistar repossessed his trucks. Sumrall alleged that Navistar violated (1) Texas usury and wrongful foreclosure laws, (2) Texas Deceptive Trade Practices Act, and (3) that Navistar was guilty of negligence and fraud. Navistar counter-

claimed for the balance due on Sumrall's notes. Based on jury findings, the trial court entered judgment for Sumrall in the amount of $83,000 plus $45,000 attorney's fees. The court denied recovery for Navistar on its cross action. Both parties have appealed.

In a series of transactions, Sumrall purchased seven trucks from Atterbury Truck Sales, Inc., and Atterbury Truck Sales of Beaumont, Inc. Navistar financed all transactions on time/price differential contracts. None of the Navistar drafted contracts disclosed the interest rate charges on the face of the contract. Six of the seven trucks purchased by Sumrall were used trucks and had previously been financed by Navistar. One of the used trucks, 19621 or unit # 5087, sold to Sumrall as a 1985 truck had previously been wrecked by a prior owner and repossessed by Navistar. This truck was actually a 1983 truck which, when rebuilt, was issued a new title with a 1985 classification, notwithstanding the fact that it had a 1983 engine, chassis, transmission, and rear end. Navistar, although having these facts in its records, failed to disclose this information to Sumrall and financed the truck as a 1985 truck.

The record reflects that after Sumrall commenced using the trucks, an inordinate amount of breakdowns and mechanical problems occurred. Although Atterbury paid for some of the repairs, the time lost while the trucks were being repaired resulted in Sumrall not being able to fulfill his contractual commitments to his customers. When his income declined, he sought relief from Atterbury and Navistar because it was apparent that, if he could not keep the trucks in operation, he could not meet his contractual obligations to Navistar. No relief was afforded by either of these parties and Sumrall filed for protection under chapter 11 of the Federal Bankruptcy Act.

In the bankruptcy court, Sumrall and Navistar filed an instrument entitled "Joint Stipulations for Adequate Protection," where they stipulated that:

(1) Sumrall owed Navistar $494,923.68;

(2) Accrued interest as of September 29, 1987 was $10,912.45;

(3) Interest was accruing at a per diem of $141.52; and

(4) Sumrall agreed to pay Navistar $2,128.19 weekly on each Tuesday.

The information shown on the stipulation was compiled by Navistar from its records and was incorrect. The actual amount due on the principal was $345,534.30. It is uncontested that these were time/price differential contracts and there was no contractual provision to charge interest.

The only other information we have in our records concerning the bankruptcy is that after the parties had filed their stipulations, the bankruptcy court dismissed the proceedings.

Based on the stipulations made in the bankruptcy court, Navistar consolidated all of its retail contracts into one contract. No notice was given to Sumrall of the consolidation of the contracts. However, Navistar sent Sumrall a new payment book whereby Sumrall was to pay $2,128.19 weekly. Navistar concedes that the principal balance owed, as shown in the stipulation, was incorrect and further that its contracts made no provision for interest on the face of the contracts. It states the errors in the stipulation were not made knowingly or intentionally and were inadvertent bona fide errors.

Following the dismissal of the bankruptcy suit, Sumrall's problems with his remaining trucks continued. When he became delinquent in payments, Navistar gave notice of delinquency and intent to foreclose based on its consolidated contract. Navistar then repossessed the trucks and sold them. Thereafter, Sumrall instituted suit and Navistar counterclaimed.

Trial was to a jury which, in response to questions submitted to it by the trial court, found: (1) Navistar had actual knowledge of facts concerning truck 19621 which it failed to disclose to Sumrall; that such failure to disclose was intended to induce Sumrall to enter into the transaction [purchase]; that Sumrall would not have en-

tered into the transaction had such information been disclosed; and that such failure was a producing cause of Sumrall's damage; (2) that Navistar knowingly failed to disclose such information; (3) Sumrall was damaged $6,000 for the difference in value of truck 19621 as received and the price paid for it; (4) the sum of $75,000 would fairly compensate Sumrall for the mental anguish he had suffered; (5) Sumrall incurred reasonable attorney's fees of $45,000, and if the case was appealed to the Court of Appeals, Sumrall would incur reasonable attorney fees of $10,000; (6) Navistar did not intentionally contract for an unlawful finance charge in the stipulation in the bankruptcy and such charge resulted from a bona fide error notwithstanding maintenance of procedures reasonably adopted to avoid such errors; and (7) the sum of money due and owing to Navistar by Sumrall under the terms of the contract is "0".

In addition to the above jury findings, the trial court's final judgment states that prior to submission of its charge to the jury, the court held as a matter of law, that the joint stipulation filed in bankruptcy proceedings was usurious on its face. The trial court also found that Sumrall was entitled to an additional $2,000 damages pursuant to the Texas Deceptive Trade Practices Act. TEX.BUS & COM.CODE ANN. § 17.50(b)(1) (Vernon 1987).

Both parties' motions for judgment notwithstanding the verdict were overruled and both have appealed from the court's rulings, findings, and final judgment.

Sumrall first alleges the trial court erred in denying his motion for instructed verdict and his motion for judgment non obstante veredicto. Specifically, he urges that the trial court erred in submitting question six to the jury.

Question No. 6 read as follows:

Do you find from a preponderance of the evidence that the contracting for unlawful finance charge in the stipulation in the bankruptcy was not intentional and resulted from a bona fide error which occurred notwithstanding the maintenance of procedures reasonably adopted by Navistar Financial Corporation to avoid such errors?

You are instructed that "bona fide error" means an innocent clerical error made inspite [sic] of reasonable procedures having been adopted and maintained by Navistar Financial Corporation which are designed to avoid said error. Bona fide error does not include ignorance of the law or mistakes of judgment.

Answer yes or no.

Answer: "Yes."

Sumrall asserts that the evidence was not only insufficient to submit question number six to the jury, but was also legally and factually insufficient to support the jury's affirmative answer to the question.

Navistar contends that it was entitled to submit the bona fide error question because the errors in the stipulation were mere clerical errors and that it had fixed procedures for checking for such errors. Navistar also asserts that it was error for the trial court to deny its motion for an instructed verdict because, as a matter of law, the stipulation filed with the bankruptcy court was only a pleading filed with that court, and, as such cannot constitute a charge of interest within the meaning of the Texas Usury Laws. It further contends that its plea of estoppel should have been granted by the trial court because all matters in this suit were presented to and resolved by the bankruptcy court.

We address Navistar's latter two contentions first because those contentions, if correct, are dispositive of all of Sumrall's claims.

■ Navistar's claim that Sumrall is judicially estopped from making his claim or that the doctrine of res judicata is applicable because of the prior bankruptcy action is without merit. Our record does not show that the bankruptcy court made a determination of any issues involved in the present suit. It shows only that Sumrall filed for chapter 11 bankruptcy, that Navistar and Sumrall filed a joint pleading entitled, "Joint Stipulation for Adequate Protection," and that the Bankruptcy Court

upon the receipt of the stipulation dismissed the bankruptcy petition.

Because our record indicates that the Bankruptcy Court did not make a determination of the issues involved in this case, we hold that the trial court correctly held that the doctrines of judicial estoppel and res judicata were not applicable to the facts in this suit.

■ The next question is whether statements made in a pleading filed with a court constitute a charge of interest within the meaning of the Texas usury laws. The Texas intermediate appellate courts are presently in disagreement as to this question. Prior to 1990, these courts had consistently held, with the tacit approval of the Texas Supreme Court, that a statement in a pleading could constitute a charge of usury. *See Moore v. White Motor Credit Corp.*, 708 S.W.2d 465, 468 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); *Nationwide Financial Corp. v. English*, 604 S.W.2d 458, 461 (Tex.Civ.App.—Tyler 1980, writ dism'd); *Moore v. Sabine National Bank of Port Arthur*, 527 S.W.2d 209, 212 (Tex. Civ.App.—Austin 1975, writ ref'd n.r.e.).

In 1990, the Dallas Court of Appeals reversed its prior holding in *Moore*. In an en banc opinion, seven judges approving the opinion and six judges dissenting, that court held that a demand for interest contained only in a pleading, if the pleader seeks the recovery of interest at an unlawful rate, does not make the pleader liable for statutory penalties. *Carpet Services v. George A. Fuller Co.*, 802 S.W.2d 343, 344 (Tex.App.—Dallas 1990, writ granted).[1] It appears that the basis for the *Carpet Services* opinion is that the pleader, when filing a suit, is not making a demand for payment upon the debtor but is making a demand upon the court in which the pleadings are filed. Thus, the *Carpet Services* opinion reasons that no demand having been made on the debtor for usurious interest, the Texas usury laws have not been violated, and the debtor does not have a valid claim of usury.

The reasoning applied in *Carpet Services* is quite logical. However, we are of the opinion that its reasoning fails because it is based on the erroneous assumption that a claim by a creditor in a legal action is not a demand for payment directed to a debtor but, rather, is a demand upon the court.

In Texas, creditors have many and varied types of resources to collect debts, *i.e.*, demand letters, acceleration of notes, repossessions, foreclosures, law suits, deficiency judgments, etc. In each of the above examples the singular purpose of the creditor is to recover from the debtor sufficient assets to pay the amount owed by the debtor to the creditor.

Generally, parties have the choice of selecting the route they wish to pursue to gain relief. However, whichever route is chosen is only a procedural method to accomplish a desired result. Demands by a creditor are directed at the debtor, not the procedural method. A judicial system is only one procedural method to resolve disputes or seek relief. Thus, we conclude that in the bankruptcy action, Navistar's demands were on Sumrall, not the bankruptcy court, and that the use of the judicial system was only a procedural means to an end.

Navistar also asserts that it was entitled to an instructed verdict because Sumrall agreed to the joint stipulation and he cannot now complain about the erroneous computations in the joint stipulation. We find no merit to this assertion. To permit a creditor, upon being faced with claims by a debtor that excessive charges in violation of usury statutes were made, to escape liability by reducing usurious charges to within statutory limits would totally negate the intent and render ineffective our usury statutes. *Rick Furniture Distributing Co. v. Kirlin*, 634 S.W.2d 738, 740 (Tex. App.—Dallas 1982, writ ref'd n.r.e.), overruled by *Carpet Services v. George A. Fuller Co.*, 802 S.W.2d 343, 344 (Tex. App.—Dallas 1990, writ granted); *Nationwide Financial Corp.*, 604 S.W.2d at 461.

1. At the writing of this opinion the supreme court has not written or acted upon the writ granted in *Carpet Services*.

We hold that Navistar's action in the bankruptcy court constituted a demand for payment from Sumrall.

■ Navistar also contends that it was entitled to submit question six, the bona fide error issue, because the errors in the stipulation were clerical errors and Navistar had fixed procedures for checking and correcting such errors. It asserts that the errors were not intentional and that Texas law provides such a defense for a creditor. *See* TEX.REV.CIV.STAT.ANN. art. 5069–8.01(f) (Vernon 1987).

Sumrall agrees that article 5069–8.01(f) provides such a defense to a creditor. However, he asserts that the evidence in this case does not support Navistar's claims or meet the requirements of that statute.

Article 5069–8.01(f) in pertinent part reads as follows:

A person may not be held liable in any action brought under this Article for a violation of this Subtitle or of Chapter 14 of this title if such a person shows by a preponderance of evidence that (1) the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid such violation....

When broken down into its essential elements, article 5069–8.01(f) requires proof by the creditor that (1) the violation was not intentional and resulted from a bona fide error; and, (2) the error occurred notwithstanding the maintenance of procedures reasonably adopted to avoid such violation.

We assume, without holding, that Navistar's violation was not intentional and resulted from a bona fide error. We turn to Sumrall's contention that Navistar's evidence was factually and legally insufficient to prove that it maintained reasonable procedures to avoid making bona fide errors.

Navistar's proffer of evidence that it had procedures to avoid making a bona fide error was made primarily through its collection supervisor, C.H. James, and its attorney in the Sumrall bankruptcy suit, John Durkay.

James testified that upon being notified of Sumrall's filing for chapter 11 bankruptcy, he retained Durkay to represent Navistar in that proceeding. He said that after Durkay had requested certain documents and information from Sumrall's files, he complied with Durkay's request. Thereafter, he had numerous phone communications with Durkay to discuss the Sumrall bankruptcy. He later received the "Joint Stipulation for Adequate Protection" document from Durkay, went over it, and returned it to Durkay with his approval.

On cross-examination, James testified that he assumed Durkay had a copy of the Sumrall printout which contained accurate computation of payments and balances on Sumrall's contracts. When asked what he did with the stipulation when he received it from Durkay, he replied, "I just skim over it." He stated that he could have obtained a printout of Sumrall's contracts that would have shown the information in the stipulation was erroneous, but he did not. He also testified that no one else in his office would have checked the stipulation for errors. In response to the question, "And the regular course when a stipulation like that comes in is you just skim over it, review it, then put it back in your file?" James answered, "That—I've never had a problem before."

Durkay's testimony corroborated James' testimony concerning his [Durkay's] retention, request for documents and information, and telephone communications with James. Durkay said he prepared the stipulation from the factual information sent to him by James. He stated that, "I don't know anything about the facts. That's got to be provided by the client...." He stated that after preparing the stipulation, he sent it to James to "check." He said he received James' approval.

Navistar is correct in its statement that it had a procedure it followed in bankruptcy proceedings. The question is whether that procedure was sufficient to comply with the article 5069–8.01(f) requirement of "maintenance of procedures reasonably adopted to avoid such [bona fide] error violations." We conclude that the answer

to this question is that Navistar maintained no procedure to avoid making bona fide errors.

Our conclusion is based upon the fact that in Navistar's procedure (1) there was no procedure to verify that the correct information was sent to the attorney; (2) there was no procedure whereby the attorney verified the information he received; (3) there was no procedure whereby the content of the stipulation sent to Navistar by its attorney was verified, although this was the very reason the attorney sent the stipulation to Navistar, that is, "To check." As far as we can ascertain from the record, no steps by anyone at Navistar were ever taken to verify the information contained in the stipulations sent to them by the attorney. Furthermore, Navistar, if it had a procedure, did not utilize its procedure to verify such information.

To avail itself of the bona fide error defense, Navistar had to maintain the procedures required by article 5069–8.01(f). That is, Navistar must have adopted and used the required procedures in the regular course of its business. Navistar's evidence, contrary to its argument, shows that, not only it did not *maintain* a procedure to avoid making a bona fide error, it did not have any procedure in place to prevent such an error. As James testified, "I just skim over it." "I never had a problem before."

We hold that the trial court improperly submitted question six to the jury, and that there was no evidence to support the jury's finding that Navistar maintained procedures reasonably adopted to avoid such [bona fide error] violations.

Sumrall's first point of error is sustained.

■ In his second point of error, Sumrall alleges that the trial court erred in failing to submit his requested issue on exemplary damages which was predicated on the jury's answer to question number two. As a result, he contends he was deprived of an opportunity to receive additional damages as provided under section 17.50(b)(1) of the Texas Deceptive Trade Practices Act.

Navistar has no quarrel with Sumrall's construction of section 17.50(b)(1). However, it points out that the refused question was not submitted in conjunction with question two, concerning Navistar's knowingly failing to disclose information, but, rather, was submitted in connection with Sumrall's claim for wrongful foreclosure.

The record reflects that the exemplary damage question submitted by Sumrall was predicated upon a finding of "we do" by the jury on a prior question. The problem is that the refused question does not show what question it is predicated upon. The space which ordinarily shows the number of the question upon which an issue is predicated was left blank.

Sumrall's discussion with the court concerning the exemplary damage question reveals his position.

THE COURT: So, your argument on the exemplary damages and your position on the foreclosure is that because of the letters being insufficient, that makes the foreclosure improper and, therefore, you're entitled to exemplary damages? MR. MONTGOMERY: That is correct, Your Honor.

It is apparent from the above discussion that Sumrall was seeking the exemplary damage issue for wrongful foreclosure, not failure to disclose information, the issue addressed in question number two.

Sumrall's point of error two is overruled.

■ In his third point of error, Sumrall asserts that the trial court erred in not submitting to the jury, his questions concerning Navistar's failure to give notice of intent to accelerate or notice of acceleration and damages as a result of such failure.

Sumrall contends that the notices he received from Navistar of intent to accelerate and acceleration were based upon Navistar's ex parte consolidation contract and not upon the original contracts executed by the parties. Thus, he contends none of the notices complied with the requirements of law and were ineffective.

The trial court held as a matter of law that the notices sent by Navistar to Sum-

rall were sufficient to apprise Sumrall of its intent to accelerate and notice of acceleration. Accordingly, the court refused to submit the questions tendered by Sumrall on those issues.

Navistar's evidence that notices were sent is uncontradicted. Sumrall's attack is upon the legal sufficiency of the notices; that is, the notices were legally insufficient because they gave notice on the wrong contract.

Sumrall does not claim that he did not understand Navistar's intent when he received the notices. He also does not claim that he was misled in any manner by the content of the notice. Further, Sumrall's actions, after receipt of the notices, in making it difficult for Navistar to repossess the trucks, made it abundantly clear that he knew precisely what Navistar's intentions were.

Where a debtor is in arrears in note payments, the purpose of notifying the debtor of the creditor's intent to accelerate is to inform the debtor of such arrearage, and to notify the debtor, if remedial action is not taken by the debtor, the creditor intends to accelerate the note. Unequivocal language must be used by the creditor in his notice of intent to accelerate. *Ogden v. Gibraltar Savings Ass'n,* 640 S.W.2d 232, 233–234 (Tex.1982).

Because the language used by Navistar in its notices of intent to accelerate and acceleration was unequivocal, and because Sumrall understood Navistar's intent and was not misled in any respect, we are of the opinion that the technical deficiencies in the notices were not of such material import to render the notices insufficient. Thus, the trial court did not err in refusing to submit the requested questions.

Sumrall's third point of error is overruled.

■ Navistar contends in its first four cross-points that there was no evidence that it failed to disclose information to Sumrall. It asserts that the trial court erred in (1) submitting question number 1 to the jury, (2) denying its motion for an instructed verdict, and (3) denying its motion for judgment non obstante veredicto.

There is evidence in the record that traces the history of truck 19621, the truck that Sumrall contends Navistar failed to disclose was a 1983 "kitted" (rebuilt) truck on which Navistar had obtained a new title as a 1985 truck. The record shows that Navistar Financial Corporation was formerly known as International Harvester Credit Corporation. International Harvester financed truck 19621 as a 1983 truck and then repossessed the truck after it had been wrecked. The repossession papers were signed by C.H. James, the same person who signed the repossession involved in the present suit. After the repossession, the truck was rebuilt and International Harvester applied for and obtained a new title as a 1985 truck. International Harvester then sold the truck to Navistar International and C.H. James signed the title reassignment. Navistar International then sold the truck to the Atterbury dealership and Navistar Financial (International Harvester Financial had now become Navistar Financial) financed this transaction with Atterbury. As heretofore shown, Atterbury then sold the truck to Sumrall as a 1985 truck and Navistar entered into the contract to provide for the financing of the sale. That contract showed truck 19621 as a 1985 truck.

The Atterbury salesman testified that he told Sumrall that truck 19621 was a "kitted" truck. Sumrall contradicted this statement and said he was never given this information and would not have bought the truck if he knew it was a 1983 truck. He also stated that he did not talk to anyone from Navistar about the truck.

It appears that several facts are undisputed. First, Navistar had actual knowledge in its records that truck 19621 was a "kitted" 1983 truck with a 1985 title. Second, Sumrall did not talk to anyone at Navistar about the purchase of the truck, however, he did talk to the Atterbury representative, the company which had purchased the truck and financed it with Navistar. Third, after Sumrall signed the Navistar printed form loan agreement at the

dealership, it was submitted to Navistar and was approved and signed. Fourth, the title to truck 19621 does not show that it was a "kitted" truck.

The parties agree that actual knowledge of information is a prerequisite to a defendant's duty to disclose information under the Texas Deceptive Trade Practices Act. See TEX.BUS. & COM.CODE ANN. § 17.46(b)(23) (Vernon 1987). They disagree on whether there was sufficient evidence to raise an issue under the requirements of that section.

Section 17.46(b)(23) requires proof by a consumer that: (1) defendant did not disclose information, (2) the information was known to the defendant, (3) such failure (nondisclosure) was intended to induce the consumer to enter into the transaction, and (4) the consumer would not have entered the transaction had the information been disclosed.

Concerning items (1) and (4) of the proof required, Sumrall testified that he was not told that truck 19621 was a "kitted" 1983 truck. Sumrall attempted to return the truck because of the extensive necessary repairs.

Concerning items (2) and (3) of the required proof, Mr. James testified he did not personally know or was not aware that this was the truck that Navistar had previously repossessed, had rebuilt, had obtained a 1985 title for, and was being financed for Sumrall as a 1985 truck. Evidence was contained in Navistar's own records, which showed its involvement with the truck wherein it had financed the original sale of the truck, repossessed the wrecked truck, had the truck rebuilt, obtained a new title, financed the sale to the dealer, and finally financed the sale to Sumrall from Atterbury. We hold that the above evidence constituted sufficient evidence to raise an issue on Navistar's knowledge and intent in this transaction. We also hold that the trial court properly submitted question number 1 and properly overruled Navistar's motion for directed verdict and motion for judgment non obstante veredicto. We further hold that the above evidence was sufficient to support the jury's affirmative response to question number 1 and was not so against the great weight and preponderance of the evidence as to be manifestly unjust.

Navistar's points of error one through four are overruled.

In its points of error five, six, and seven, Navistar attacks the trial court's submission of question number 2 to the jury. It asserts that there was no evidence to submit the question and that the jury's finding that Navistar "knowingly" failed to disclose evidence to Sumrall about truck 19621 was against the overwhelming weight and preponderance of the evidence.

In our discussion of Navistar's cross-points one through four, we thoroughly discussed the evidence of Navistar's knowledge and intent when it entered into the financial contract with Sumrall. That same evidence is applicable to Navistar's points of error five, six and seven. We are of the opinion that there was not only sufficient evidence to submit question number 2 to the jury but also sufficient evidence to support the jury's affirmative finding.

Navistar's points of error five, six, and seven are overruled.

In its points of error eight, nine, and ten, Navistar contends that there was no evidence to submit question number 3 to the jury, and no evidence or insufficient evidence to support the jury's finding of $6000. Question number 3 inquired as to the difference in value, if any, of truck 19621 as received by Sumrall, and the price he paid for it.

Sumrall's evidence to show the difference in value of truck 19621 as received and what he paid for it consisted of his own testimony and his offer of the stipulation made in the bankruptcy court. He testified that in April 1987, he purchased four trucks from Atterbury for $140,000. The trucks were represented to be a 1982, two 1984s and one 1985 models. He stated the 1985 truck turned out to be a 1982 model. He believed that the actual market value of the four trucks in April 1987, was $100,000, not the $140,000 he paid for them.

The stipulation filed with the bankruptcy court by the parties is dated January 26, 1988. Truck 19621 is classified as a 1985 truck and is given a value of $29,000. Another 1985 truck is given a value of $35,000.

The proper measure of damages for misrepresentation is either (1) the difference between the value of that which is parted with and that which is received; or (2) the difference between the value as represented and the value actually received. *W.O. Bankston Nissan, Inc. v. Walters*, 754 S.W.2d 127 (Tex.1988).

Sumrall's testimony shows that he purchased the four trucks for a lump sum price. His testimony at trial shows that, in retrospect, he believed the actual market value was $100,000, not the $140,000 he agreed to pay. This testimony did not establish the difference in value of truck 19621 as accepted and the value or purchase price on the date of delivery. Too, the evaluations on the two different 1985 trucks on the bankruptcy stipulation does not establish the difference between the value of truck 19621 as accepted and its value if it had been a 1985 truck. The stipulation shows only the agreed stipulated value of two different 1985 trucks.

We find no evidence in the record that establishes the difference between the value of truck 19621, as received in April 1987, and its actual market value on that date.

Appellee's cross-points of error eight, nine, and ten are sustained.

In its points eleven, twelve, and thirteen, Navistar alleges that the trial court erred in submitting question number 4 to the jury because there was no evidence to support its submission, and similarly, there was no evidence or insufficient evidence to support the jury's answer.

Question number 4, inquired whether Sumrall sustained mental anguish and, if so, asked the jury to place a value on it. The jury answered $75,000.

Navistar again contends that Sumrall failed to prove a knowing violation of the Texas Deceptive Trade Practices Act, and for that reason he was not entitled to damages in question number 4. Because we have held that the trial court properly submitted that issue to the jury, we find no merit to this contention.

Navistar next contends that there was no evidence or insufficient evidence to support the jury's finding that Sumrall sustained $75,000 damages because of mental anguish.

The evidence shows that Navistar failed to disclose to Sumrall that truck 19621 shown on the loan agreement was actually a "kitted" 1983 truck. It also shows that, after Navistar approved the financing for the purchase of truck 19621 and the three other trucks, Sumrall was notified of Navistar's approval and that he could pick up the trucks. He, accordingly, made arrangements for these trucks to be driven from Atterbury's place of business to his loading dock. Truck 19621 and another truck did not reach the loading dock that day. These two trucks broke down and had to be taken for repair before they could be used by Sumrall.

As heretofore noted, truck 19621 and the other trucks had an inordinate amount of breakdowns. Sumrall lost contracts with customers because of the breakdowns. He also lost revenue because of the breakdowns and became delinquent in his payments to Navistar. He explained his problem to Navistar and offered to return truck 19621 and the other trucks, if Navistar would cancel his note. This offer was rejected. To protect himself Sumrall filed for bankruptcy. After the bankruptcy was dismissed, his trucks were repossessed and his business failed. The record also shows that Sumrall suffered a heart attack during the sequence of the above occurrences.

Navistar's failure to disclose that truck 19621 had been wrecked, repaired, and was not a 1985 truck, but a "kitted" 1983 truck, may not have been the sole cause of Sumrall's problems. However, from the evidence, it is manifest that it was a major problem and was a producing cause of much mental anguish to Sumrall. These facts constituted sufficient evidence of

mental anguish for the trial court to submit the issue to the jury.

Fixing the amount of the damages is a duty of the jury in a jury trial. It is not the prerogative of intermediate appellate courts to substitute its judgment for that of a jury where there is evidence to support a jury finding. *Herbert v. Herbert,* 754 S.W.2d 141 (Tex.1988).

We hold there was sufficient evidence for the trial court to submit question number 4 to the jury and to support the jury's finding of $75,000.

Navistar's cross-points eleven, twelve, and thirteen are overruled.

Navistar's cross-point fourteen assumes that there is no liability on its part, and that as a result, the trial court improperly awarded attorney's fees. Because we have heretofore affirmed Navistar's liability, we overrule its cross-point fourteen.

 Navistar's cross-point fifteen attacks the trial court's finding as a matter of law, that the bankruptcy stipulation was usurious on its face.

In our discussion of Sumrall's point of error one, we have heretofore held that a pleading can constitute a usurious claim against a debtor. Navistar has admitted that the stipulation it prepared and filed was erroneous in that it claimed that Sumrall owed it $149,398.38 more principal than was actually due. Navistar has also admitted that its claim for past interest of $10,-912.45 and future per diem interest at $141.52, was erroneous because the time/price differential contract between the parties contained no provision for interest charges.

Navistar correctly points out that when a contract is susceptible to more than one reasonable construction, the courts should adopt the construction which comports with legality. *Tygrett v. University Gardens Homeowners' Ass'n,* 687 S.W.2d 481 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). However, the claim for interest by Navistar in the bankruptcy stipulation is clear and unambiguous. It is not susceptible to more than one reasonable construction; Navistar was seeking the payment of interest when its time/price differential contract contained no provision for the payment of interest.

When there is no provision in a contract for the payment of interest, the applicable interest rate is 0%, and any charge of interest is in excess of double the amount of 0% interest. *Jim Walter Homes, Inc. v. Valencia,* 679 S.W.2d 29, 34 (Tex.App.—Corpus Christi 1984), *aff'd as modified,* 690 S.W.2d 239 (Tex.1985). It is uncontested that the charging of interest under the facts of this case exceeds the amount of interest permissible under law.

Navistar's fifteenth cross-point of error is overruled.

 In its sixteenth cross-point of error, Navistar contends that the jury's answer of "0" to question number 7 was contrary to and against the overwhelming weight and preponderance of the evidence. Question number 7 asked the jury to determine the sum of money, if any, due and owing to Navistar by Sumrall under the terms of the retail installment contracts involved.

Navistar's witnesses testified that Sumrall owed $146,676.62 on the four original contracts between Sumrall and Navistar. Although one witness testified that Navistar still possessed and owned the contracts, he stated the contracts could not be located. The trial court, over objection, permitted copies of the contracts to be introduced.

An internal document of Navistar, produced by Sumrall, showed that after the trucks had been repossessed by Navistar, Sumrall owed nothing. At some later date, Navistar made entries in its financial records to show that Sumrall was deficient $146,676.42.

As discussed previously, there is evidence that Navistar claimed an erroneous amount of principal due, and claimed interest when the time/price differential contract made no provision for interest charges. There is also evidence that when C.H. James consolidated the contracts into one contract, he erred when he added further interest into Sumrall's balance. There is also evidence that raised a question of whether C.H. James correctly applied in-

surance proceeds from wrecked trucks to Sumrall's indebtedness. It appears to be undisputed that Navistar's financial records showed a "0" balance after it repossessed the trucks, and that there is no evidence showing a specific date when Navistar reconstructed its financial records to show Sumrall owed a deficiency of $146,676.62. We hold that the above evidence was sufficient to raise an issue of the amount due on Sumrall's contracts with Navistar.

In addition, it appears that Navistar assumes the reason the trial court denied it a recovery on its claimed deficiency was because the jury answered "0" to question number 7. This may be an erroneous assumption because article 5069–8.02 of the Texas Revised Civil Statutes provides that "Any person who violates this Subtitle by contracting for, charging or receiving interest, time price differential or other charges which are in the aggregate in excess of double the total amount of interest, time price differential, and other charges ... shall forfeit to the obligor as an additional penalty all principal ... as well as all interest or time price differential, and all other charges...."

As heretofore noted, any interest charged is in excess of double the amount of interest, where there is no provision for interest charges. The trial court's judgment does not state why it denied Navistar's claimed deficiency, however, it could have denied such recovery because Sumrall pleaded for article 5069–8.02 relief and the court found as a matter of law that the claim of Navistar was usurious. We hold that the trial court properly submitted question number 7 to the jury and there was sufficient evidence to support the jury's answer. We further hold that the trial court properly denied Navistar's claim for a deficiency on its notes.

Navistar's cross-point of error sixteen is overruled.

Having sustained Navistar's points of error eight, nine and ten, the judgment of the trial court is reformed to delete the award of $6,000 to Sumrall. Having overruled Navistar's points of error eleven, twelve, thirteen and fourteen, the award of $77,000 in damages and $45,000 for attorneys fees to Sumrall is affirmed. Having sustained Sumrall's point of error one, we remand for a determination by the trial court of damages under article 5069–8.01 and article 5069–8.02.[2] It is ordered that each party shall pay their own costs of this appeal and the respective parties' request for attorney's fees for this appeal is denied.

The judgment of the trial court is affirmed as reformed, reversed in part, and remanded.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

---

BROOKSHIRE, Justice, concurring.

I readily concur. The record contains a *"JOINT STIPULATIONS FOR ADEQUATE PROTECTION".* This joint stipulation was initially introduced in a bankruptcy proceeding. The bankruptcy proceeding was under Chapter 11 of the Bankruptcy Code. Later, of course, in the State court proceeding, the plaintiff Sumrall, through his attorney, reoffered this joint stipulation as Plaintiff's Exhibit No. 10 which was admitted without any objection.

The trial judge specifically recited in his judgment of May 15, 1990, that prior to submitting the charge of the court to the jury, the court ruled as a matter of law that the said joint stipulation in bankruptcy (being Plaintiff's Exhibit No. 10, a joint stipulation in this record) was usurious on its face thereby allowing the submission to the jury of Question 6 on bona fide error.

Furthermore, as I comprehend the record, Question 6 was requested by Navistar. Question 6 was favorable to and a defensive issue favoring Navistar. In view of these matters, inter alia, I concur that the present imperfection in the judgment appealed from affects only a part of the matter in controversy and such a part— being the usury question—is now clearly

---

**2.** The determination is by the court since no jury questions were requested by Sumrall and no objection was made by Navistar. TEX. R.CIV.P. 279.

malformed

separable without any unfairness to the parties.

Hence, it is proper to remand to the trial bench a mathematical determination of the proper damages under TEX.REV.CIV.STAT. ANN. arts. 5069–8.01 and 5069–8.02 (Vernon 1987). The limited remand as ordered by the majority is correct since it is not a separate trial on unliquidated damages. The damages under arts. 5069–8.01 and 5069–8.02 are, in my opinion, liquidated damages in nature and ascertainable mainly by mathematical calculations. TEX. R.APP.P. 81(b)(1)(c).